**DENTONS US LLP**
Stephen M. Turner, Esq.
stephen.turner@dentons.com
101 JFK Parkway, 4th Floor
Short Hills, New Jersey 07078
Tel: 973-912-7100
Fax: 973-912-7199

[and]

**DENTONS US LLP**
Bety Javidzad, Esq. (*pro hac vice* forthcoming)
bety.javidzad@dentons.com
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017
Tel: 213-623-9300
Fax: 213-623-9924
*Attorneys for Defendant*
*Commercial Real Estate Exchange, Inc.*

|  |  |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, SCOTT MALONEY, JUSTYNA MALONEY, and PETER ANDREYEV, <br><br> Plaintiffs, <br><br> vs. <br><br> COMMERCIAL REAL ESTATE EXCHANGE, INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, <br><br> Defendants. | UNITED STATES DISTRICT COURT <br> DISTRICT OF NEW JERSEY <br><br> Civil Action No. _____ <br><br><br> **NOTICE OF REMOVAL OF DEFENDANT COMMERCIAL REAL ESTATE EXCHANGE INC.** <br><br> Removed from the Superior Court of New Jersey, Morris County, Law Division |

TO:    United States District Court - District of New Jersey
       Martin Luther King Building & U.S. Courthouse
       50 Walnut Street
       Newark, New Jersey 07101

With Notice to:

1

Clerk of the Superior Court of New Jersey
Morris County, Civil Division
10 Court Street, 1st Floor
Morristown, New Jersey 07960

Rajiv D. Parikh
Kathleen Barnett Einhorn
Genova Burns LLC
494 Broad Street
Newark, New Jersey 07102

[and]

John A. Yanchunis
Morgan & Morgan
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
*Attorneys for Plaintiff*

**PLEASE TAKE NOTICE THAT** on March 21, 2024, based on the following allegations, Defendant Commercial Real Estate Exchange, Inc., d/b/a CREXI ("CREXI"), did and hereby does remove this action from the Superior Court of New Jersey, Morris County, Docket No. MRS-L-271-24, to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 with full reservation of any and all defenses and objections.

## D.N.J. LOCAL RULE 10.1 STATEMENT

1.       The plaintiffs in this action are Atlas Data Privacy Corporation, Jane Doe-1, Jane Doe-2, Scott Maloney, Justyna Maloney and Peter Andreyev.  The address for Atlas Data Privacy Corporation is Five Greentree Centre, 525 Route 73, Suite 104, Marlton, New Jersey 08053.  The remaining addresses are unknown to defendant CREXI and were not included in Plaintiffs' Complaint.  Specifically, CREXI is unable to locate the precise addresses of plaintiffs Jane Doe-1 and Jane Doe-2, whose identities are unknown.  And CREXI is unable to locate the precise addresses of the remaining individual plaintiffs, who, as set forth in Plaintiffs'

Complaint, are law enforcement officers who have availed themselves of New Jersey laws to conceal their addresses. Plaintiffs are represented by Rajiv D. Parikh, Esq. and Kathleen Barnett Einhorn, Esq. of Genova Burns LLC, 494 Broad Street, Newark, NJ 07012 and John A. Yanchunis, Esq. of Morgan & Morgan, 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

2.     The defendant in this action Commercial Real Estate Exchange, Inc. d/b/a CREXI. CREXI is located at 5510 Lincoln Boulevard, Suite 400, Playa Vista, CA 90094. CREXI is represented by Stephen M. Turner, Esq. of Dentons US LLP, 101 JFK Parkway, 4th Floor, Short Hills, NJ 07078 and Bety Javidzad, Esq. of Dentons US LLP, 601 South Figueroa Street, Suite 2500, Los Angeles, CA 90017.

## NOTICE OF REMOVAL IS TIMELY

3.     On or about February 9, 2024, Plaintiffs Atlas Data Privacy Corp. ("Atlas"), Jane Doe-1, Jane Doe-2, Scott Maloney, Justyna Maloney and Peter Andreyev (the "Individual Plaintiffs")(collectively, with Atlas, "Plaintiffs") filed a civil action against CREXI in the Superior Court of New Jersey, Morris County, captioned Atlas Data Privacy Corp. et al. v. Commercial Real Estate Exchange, Inc., which was assigned Docket No. MRS-L-271-24 (the "State Court Action"). A true and correct copy of the Complaint in the State Court Action is attached hereto as **Exhibit A**.

4.     CREXI received a Summons and Complaint in the State Court Action on or about February 22, 2024. A true copy of the Summons in the State Court Action and Notice of Service of Process is attached hereto as **Exhibit B**.

5.     Removal is timely pursuant to 28 U.S.C. § 1446(b) because this Notice is filed within thirty (30) days after service of the Complaint upon CREXI.

6.      To CREXI's knowledge, no additional process, pleading or order has been filed to date in this action outside of the Complaint and Summons, attached as Exhibits A and B respectively.

7.      Written notice of the filing of this Notice of Removal will be served upon Plaintiffs' counsel as required by 28 U.S.C. § 1446(d).

8.      A copy of this Notice of Removal is being served upon counsel for Plaintiffs and is being filed contemporaneously with the Clerk of the Superior Court of New Jersey, Morris County, as required by 28 U.S.C. 1446(d).

9.      Venue is proper under 28 U.S.C. § 1441(a) because the Superior Court of New Jersey, Morris County is located within the district of the United States District Court for the District of New Jersey.

10.      As is set forth in detail below, the Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the true parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## DIVERSITY OF CITIZENSHIP

**Defendant**

11.      Defendant CREXI is incorporated in the State of Delaware, and has its principal place of business in Playa Vista, California.  Pursuant to 28 U.S.C § 1332(c)(1), therefore, CREXI is a citizen of both Delaware and California.

12.      RICHARD ROES 1-10 and ABC COMPANIES 1-10 are wholly fictitious and are disregarded for purposes of removal.

**Individual Plaintiffs**

13.    Plaintiffs assert that Plaintiff Scott Maloney is currently a veteran police officer serving with the Rahway, New Jersey Police Department and that Officer Maloney is a resident of New Jersey.  *See*, Exhibit A at ¶ 17.

14.    Plaintiffs assert that Plaintiff Justyna Maloney is currently a veteran police officer serving with the Rahway, New Jersey Police Department and that Officer Maloney is a resident of New Jersey.  *Id.*

15.    Plaintiffs assert that Plaintiff Officer Peter Andreyev is a 32-year veteran of the Point Pleasant New Jersey Police Department.  *Id.* at ¶ 21.  Upon information and belief, Officer Andreyev is a resident of the State of New Jersey.  *See*, N.J.S.A. 40A:14-122.8 ("Every member of a police department and force shall be a resident of the State of New Jersey while serving in such position."); N.J.S.A. 52:14-7(a)(3) ("Every person holding an office, employment, or position … (3) with a county, municipality, or other political subdivision of the State or an authority, board, body, agency, district, commission, or instrumentality of the county, municipality, or subdivision … shall have his or her principal residence in this State and shall execute such office, employment, or position.")

16.    Plaintiffs assert that Plaintiff JANE DOE-1 is a veteran police officer working in Northern New Jersey.  Exhibit A at ¶ 15.  Upon information and belief, JANE DOE-1 is a resident of the State of New Jersey.  *See*, N.J.S.A. 40A:14-122.8 ("Every member of a police department and force shall be a resident of the State of New Jersey while serving in such position."); N.J.S.A. 52:14-7(a)(3) ("Every person holding an office, employment, or position … (3) with a county, municipality, or other political subdivision of the State or an authority, board, body, agency, district, commission, or instrumentality of the county, municipality, or subdivision

… shall have his or her principal residence in this State and shall execute such office, employment, or position.")

17.    Plaintiffs assert that Plaintiff JANE DOE-2 is a correctional police officer who lives in Northern New Jersey and that she is, therefore, a resident of the State of New Jersey. Exhibit A at ¶ 16.

18.    As such, all Individual Plaintiffs are residents of the State of New Jersey for diversity purposes.

**Atlas Data Privacy Corporation**

19.    Atlas is the purported assignee of the rights of 16,705 individuals who are all "covered persons" under Daniel's Law.  *Id.* at ¶ 23.

20.    The assignees are described as individuals who are judges, law enforcement officers, prosecutors and/or family members of same.  *Id.*

21.    Upon information and belief, the assignees of Atlas are residents of New Jersey[1]. *See*, N.J.S.A. 40A:14-122.8 ("Every member of a police department and force shall be a resident of the State of New Jersey while serving in such position."); N.J.S.A. 52:14-7(a)(3) ("Every person holding an office, employment, or position … (3) with a county, municipality, or other political subdivision of the State or an authority, board, body, agency, district, commission, or instrumentality of the county, municipality, or subdivision … shall have his or her principal residence in this State and shall execute such office, employment, or position.")

22.    Atlas is a Delaware corporation with its principal place of business located in New Jersey.  Therefore, for diversity purposes, Atlas is a citizen of Delaware and New Jersey.

---

[1] Atlas also asserts that the assignees include persons who "had previously resided or worked in New Jersey."  *Id.* at ¶ 24.  CREXI is not in possession of the assignments, but, upon information belief, none of the assignees reside in either of Delaware and/or California.

23.     While typically, the presence of Atlas would eliminate diversity jurisdiction (as CREXI is also a Delaware corporation), this Court may disregard the citizenship of Atlas, because it is not the real party in interest and, upon information and belief, the assignees partially assigned their rights to Atlas for the purpose of improperly and/or collusively defeating diversity jurisdiction.

24.     In *Kramer v. Caribbean Mills, Inc.*, the United States Supreme Court held that assignments, even ones permissible under state law, can be disregarded for diversity purposes where "improperly or collusively" made for purposes of manipulating diversity jurisdiction. 394 U.S. 823, 825 (1969). The Supreme Court has since made pronouncements that the "diversity jurisdiction statute [requires] courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating **or destroying diversity jurisdiction**." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014)(emphasis added).

25.     Circuit Courts and District Courts around the country have likewise taken the position that assignments cannot "improperly or collusively" be used to create *or destroy diversity jurisdiction*. *See*, *e.g.*, *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990)("Because of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard; that is, the issue of whether the assignment was improperly or collusively made is to be resolved as a simple question of fact."); *Attorneys Tr. v. Videotape Computer Products, Inc.*, 93 F.3d 593, 597 (9th Cir. 1996)("There has been much less case law on the question of assignments which destroy jurisdiction. Of course, assignments of that kind are not specifically covered by 28 U.S.C. § 1359. However, what modern authority there is also focuses on the reality of the transaction."); *Slater v. Republic-Vanguard Ins. Co.*, 650 F.3d 1132, 1135 (8th Cir. 2011)("In many cases considering whether a

partial assignment created or destroyed diversity jurisdiction, federal courts have disregarded assigned or retained interests that were more substantial than the $100 interest retained by LCI."); *Carter v. Seaboard Coast Line R. Co.*, 318 F. Supp. 368, 372 (D.S.C. 1970)("It is accordingly, the right of this Court, when the issue of federal jurisdiction is raised, to inquire into the purpose and character of an assignment, which either creates or defeats federal jurisdiction."); *E. I. Du Pont D Nemours & Co. v. Agfa NV*, 2:18CV326, 2019 WL 279989, at *9 (E.D. Va. Jan. 22, 2019)("Most cases that have considered this narrow question have determined that a collusive transfer to defeat subject matter jurisdiction may be held invalid."); *JMTR Enterprises, L.L.C. v. Duchin*, 42 F. Supp. 2d 87, 93 (D. Mass. 1999); *Picquet v. Amoco Prod. Co.*, 513 F. Supp. 938, 940 (M.D. La. 1981); and *Gentle v. Lamb-Weston, Inc.*, 302 F. Supp. 161, 166-67 (D. Me. 1969).

26.    In determining whether an assignment has been "improperly" and/or "collusively" made, Courts have looked to a number of factors.  To make this determination, a district court may examine several factors, including: (1) the comparative size of the interest assigned[2]; (2) whether the assignee held any interest in the litigation before the assignment; (3) whether the assignor and assignee are controlled by the same party; (4) whether the assignment occurred shortly before the litigation commenced; (5) whether the assignment represents what is essentially a contingent fee arrangement for collection work; and (6) whether there is a strong likelihood of prejudice against the defendant. *NPD Mgmt. & Bldg. Servs., Inc. v. Geismar N.*

---

[2] Even in the unlikely event that Atlas is a complete assignee, the trend is for courts to look at and behind the pleadings to determine whether an assignee's citizenship should be deemed collusive and disregarded as inconsequential to the diversity analysis.  *See*, *Attorneys Trust*, 93 F.3d at 600 (holding that courts "may look to all of the facts and circumstances and ask whether the assignment did destroy diversity jurisdiction.").

*Am., Inc.*, CV 20-2739, 2021 WL 5231870, at *4 (E.D. La. Nov. 10, 2021), citing, *Grassi*, 894 F.2d at 186.

27.     These factors weigh in favor of ignoring the assignments to Atlas by the persons alleged to be covered under the auspices of Daniel's Law for purposes of diversity jurisdiction. Indeed, the timeline of events shows that Atlas is a de facto contingent fee/litigation finance vehicle formed solely to serve as a litigation tool for Daniel's Law claimants, Atlas's investors, and the lawyers representing Atlas at the Genova Burns, LLC and Morgan & Morgan law firms.

28.     As an initial matter, Atlas did not exist prior to the passage of Daniel's Law. Daniel's Law was enacted in November 2020.  *See*, Exhibit A at ¶ 8.  Atlas was not incorporated until April 27, 2021.  *See*, **Exhibit C**.

29.     Upon information and belief, on or about April 11, 2023, Rajiv D. Parikh – i.e. Plaintiffs' present counsel from Genova Burns, LLC – registered as a lobbyist for Atlas in New Jersey, pushing for amendments to Daniel's Law to (i) allow covered persons to assign their interests to companies like Atlas to pursue claims in litigation; and (ii) make the previously permissive damages provisions mandatory.  *See*, **Exhibits D** and **E**.

30.     Based on these lobbying efforts, Daniel's Law was, in fact, amended on July 20, 2023 on those two grounds most beneficial to entities like Atlas.

31.     Upon information and belief, after passage of amendments to Daniel's Law in July 2023, Atlas obtained partial assignments from covered persons for the purpose of initiating litigation against companies like CREXI.

32.     Atlas registered to do business in New Jersey on or about January 12, 2024.  *See*, **Exhibit F**.

33.     A mere six days later, Atlas began sending more than 16,700 requests to CREXI for removal of information covered under Daniel's Law, as part of a campaign to send thousands of requests to more than 130 businesses.[3]  *See*, Exhibit A at ¶¶ 23, 48.

34.     Less than a month after registering to do business in New Jersey, Atlas filed this lawsuit, with its lobbying firm signing on as Plaintiffs' counsel.  *See*, generally, Exhibit A.  Thus, it could not be clearer, based on the foregoing timeline, that the assignments to Atlas are part of a broader, well-coordinated litigation strategy concocted by Plaintiffs' counsel and Atlas in an effort to monetize New Jersey's Daniel's Law for their benefit.

35.     Courts in such situations do not hesitate to disregard an entity like Atlas's citizenship in assessing diversity jurisdiction.  Prior to these assignments, Atlas had no interest in the rights now assigned.  Indeed, presently, Atlas has no claims of its own separate and apart from those of the assignees.

36.     Upon information and belief, these assignments – much like assignments that courts across the country have found to be "improper" or "collusive" for the purpose of defeating diversity jurisdiction, even where, as here, expressly permitted under state law – are in essence partial assignments to collect a debt allegedly owed by virtue of CREXI's purported noncompliance with Daniel's Law.  In other words, they are the sort of contingent fee arrangement for collection work that many courts have found to be improper and/or collusive for purposes of defeating diversity jurisdiction.

---

[3] The 130 companies that Atlas has sued are listed in five consolidation motions filed by Atlas on March 12, 2024 in *Atlas Data Privacy Corporation, et al. v. Pipl, Inc.*, Case No. MON-L-000481-24 (Monmouth County, NJ); *Atlas Data Privacy Corporation, et al. v. New Jersey Property Records, LLC*, Case No. MID-L-000811-24 (Middlesex County, NJ); *Atlas Data Privacy Corporation, et al. v. Melissa Data Corp.*, Case No. MRS-L-000224-24 (Morris County, NJ); *Atlas Data Privacy Corporation, et al. v. Enformion, LLC*, Case No. BER-L-000767-24 (Bergen County, NJ); *Atlas Data Privacy Corporation, et al. v. Whitepages, Inc.*, **(footnoted continued…)**

37.     No assignment was necessary for Atlas to perform this function.

38.     Thus, from the face of the pleadings and based on the applicable legal standard, this Court may ignore the assignments to Atlas for purposes of diversity jurisdiction.  And, in the absence of Atlas, complete diversity of citizenship existed between the parties at the time Plaintiff's Complaint was filed, and complete diversity of citizenship exists at the time of removal.

39.     If the Court nevertheless still questions diversity of citizenship, it should – at a minimum, and before ruling on any motion to remand – order discovery of Atlas related to the factors relevant to the diversity analysis under Grassi and its progeny (such as the size of the interest assigned, whether the assignee had any interest in the matter before the assignment, whether the assignor and assignee had separate counsel, whether the assignee's attorney is controlling the litigation, the timing of the assignment, whether the assignment could be considered a sort of contingent fee arrangement, and whether there was a strong likelihood of prejudice against the defendant.  *See also*, *e.g.*, *Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*, 794 F. Supp. 2d 265, 268 (D. Mass. 2011)(permitting limited jurisdictional discovery into assignments alleged to be collusive in nature); *Hagenbaugh v. Nissan N.A.*, 2022 WL 676277, at *4 (M.D. Pa. Mar. 7, 2022) (allowing a removing defendant take to jurisdictional discovery because the plaintiff challenged allegations in the notice of removal); *Mithril GP Emp. Feeder LLC v. McKellar*, 2020 WL 3206555, at *1 (D. Del. June 15, 2020) (same).

40.     Indeed, the default position in the Third Circuit is that jurisdictional discovery should be allowed unless [a jurisdictional] claim is 'clearly frivolous.' " *Qtech Servs., LLC v. Verition Fund Mgmt., LLC*, CIV.A. 2-10-CV-00495, 2010 WL 4961636, at *2 (D.N.J. Nov. 30,

---

Case No. MER-L-000270-24 (Mercer County, NJ).

2010), quoting, *Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir.1997).  *See also*, *Fabricant v. Intamin Amusement Rides Int. Corp. Est*, CV 19-12900, 2019 WL 3315496, at *3 (D.N.J. July 24, 2019)("Jurisdictional discovery is appropriate where a party raises a factual challenge to jurisdiction."). Therefore, at a minimum, the Court should permit limited jurisdictional discovery into Atlas if Atlas seeks to remand this case to Superior Court in New Jersey.

## AMOUNT IN CONTROVERSY

41.    The second requirement of traditional diversity jurisdiction is that the amount in controversy exceed $75,000.  See, 28 U.S.C. § 1332(a).  When the Plaintiffs' complaint, as here, "does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e]' the amount in controversy."  *Yucis v. Sears Outlet Stores, LLC*, 813 Fed. App'x 780, 782 n.2 (3d Cir. 2020), quoting, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

42.    In this action, Plaintiffs seeks to recover compensation based on CREXI's alleged failure to comply with Daniel's Law.  *See*, Exhibit A at ¶¶ 47, 59, Wherefore ¶ B, C, D.

43.    Plaintiffs allege that Daniel's Law requires the award, under N.J.S.A. 56:8-166.1(c), of the following damages:  (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act; (2) punitive damages upon proof of willful or reckless disregard of the law; (3) reasonable attorney's fees and other litigation costs reasonably incurred.  *Id.* at ¶ 47.

44.    As plead in its complaint, Atlas, standing alone, satisfies the required amount in controversy.  As the purported assignee of 16,705 covered persons, at a minimum, Atlas seeks to recover $16,705,000 from CREXI – far in excess of the $75,000 threshold – not inclusive of

Plaintiffs' request for punitive damages, attorneys' fees and injunctive relief, all of which the Court may consider.

45.    Atlas may argue that CREXI should not get the benefit from assignment aggregation in light of CREXI's argument that Atlas's citizenship should be disregarded in assessing diversity jurisdiction.  This position, however, would be incorrect and not supported by case law.  Diversity of citizenship is a concept distinct from the amount in controversy, and, moreover, CREXI does not argue here (but reserves the right to do so later) that the partial assignments themselves are invalid – only that they should be disregarded in assessing citizenship.  Thus, based on the face of Plaintiffs' Complaint, Atlas is a single plaintiff with claims valued at no less than $16,705,000.  In light of that fact, the Court can exercise traditional diversity jurisdiction over Atlas, while, as detailed *infra*, exercising supplemental jurisdiction over the other plaintiffs.

46.    Even if the Court were to ignore Atlas, the Individual Plaintiffs' claims may exceed the jurisdictional threshold for the amount in controversy.  For example, JANE DOE-1 claims, in essence, that publication by CREXI allowed a criminal organization to locate her home address such that she fears for her life.  Exhibit A at ¶ 15.  It is likely that, to the extent Plaintiffs seek actual damages for JANE DOE-1 (as opposed to liquidated damages under the Statute) that any such damages may alone exceed the jurisdictional threshold.

47.    Upon information and belief, the claims of individual assignees may likewise exceed the jurisdictional threshold on their own.

48.    This Court may also consider punitive damages and attorneys' fees in determining whether the amount in controversy threshold is exceeded.  *See*, *e.g.*, *Ifill v. CVS Pharmacy*, CV2014818KMJBC, 2021 WL 486884, at *2 (D.N.J. Feb. 9, 2021), quoting, *Huber v. Taylor*,

532 F.3d 237, 244 (3d Cir. 2008)("[C]laims for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum."); and *Entrekin v. Fisher Sci. Inc.*, 146 F. Supp. 2d 594, 618 (D.N.J. 2001)(emphasis added)("Attorneys' fees and costs are generally excluded from the amount in controversy calculations *unless they are available under a statute or contractual provision*.")

49.    As to punitive damages, these alone, if awarded, are likely to exceed the jurisdictional threshold based on N.J.S.A. 2A:15-5.14(b), which provides, "No defendant shall be liable for punitive damages in any action in an amount in excess of five times the liability of that defendant for compensatory damages *or $350,000, whichever is greater*." (emphasis added).

50.    As to attorneys' fees, and as referenced in Plaintiffs' complaint, N.J.S.A. 56:8-166.1(c) provides for the award of attorneys' fees if successful on their claims.  Plaintiffs' attorneys' fees alone would likely exceed the jurisdictional threshold in this case.

51.    Finally, the Court can also take into account injunctive relief in determining the amount in controversy because Daniel's Law states that the Court may award "any other preliminary and equitable relief as the court determine to be appropriate."  N.J.S.A. 56:8-166.1(c)(4).  Plaintiffs ask the Court to enter "equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law."  Exhibit A at Wherefore, ¶ F.

52.    When a plaintiff in a diversity case seeks injunctive relief, the amount in controversy is determined by the "value of the object of the litigation."  *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995), quoting, *Hunt v. Washington*

*Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977).  In addressing the value of the requested injunctive relief, courts in the Third Circuit focus on the value to the plaintiff.  See, e.g., USAA Casualty Ins. Co. v. CIT Bank, 2018 WL 3213324, at *4 (D.N.J. May 15, 2018).  Here, there are two aspects to valuing Plaintiffs' requested injunctive relief:  (1) the cost of retaining an "independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law," and (2) the value of CREXI's ongoing compliance with Daniel's Law to the Plaintiffs. The first part of Plaintiffs' requested injunctive relief is more concrete and likely is itself dispositive of the amount in controversy question, even if it were not paired with the compensatory/statutory damages, punitive damages, and attorneys' fees that Plaintiffs likewise request.

53.    Accordingly, CREXI plausibly pleads here that any plaintiff – whether Atlas, the Individual Plaintiffs, or the assignees of Atlas – has an amount in controversy of more than $75,000.

54.    As to the remaining claims of any plaintiff that do not exceed the jurisdictional threshold for the amount in controversy, this Court may exercise supplemental jurisdiction over those claims.  *See*, 28 U.S.C. § 1367(a), "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

55.    CREXI disputes Plaintiffs' entitlement to recover any of the amounts that are or may be sought in this action.

## **REMOVAL IS PROPER UNDER CAFA**

56.     Even though this Court has diversity jurisdiction for the reasons stated *supra*, removal of this action is also proper under the Class Action Fairness Act ("CAFA").  "CAFA confers on district courts 'original jurisdiction of any civil action' in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members ('numerosity requirement)." Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d 495, 500 (3d Cir. 2014) (quoting 28 U.S.C. § 1332(d)(2), (5)(B), (6)). In addition, to be considered a "class action" under CAFA, the suit must be "filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action[.]" 28 U.S.C. § 1332(d)(1)(B).

57.     This suit satisfies all of CAFA's requirements for federal jurisdiction over a class action because (1) there is minimal diversity between the parties; (2) the aggregate amount-in-controversy exceeds $5,000,000; (3) the putative class exceeds 100 members; and (4) the suit was filed under a state-law analogue to Rule 23.

58.     As noted above, minimal diversity is met, because the citizenship of the Individual Plaintiffs – all residents of New Jersey – is different from that of CREXI, who is a citizen of Delaware and California.  The aggregate amount in controversy is likewise met by aggregating – at a minimum – the liquidated damages under Daniel's Law of $1,000 per violation for 16,705 assignees, totaling $16,705,000.  This is to say nothing of the claims for punitive damages, attorneys' fees or request for injunctive relief.

59.     The numerosity requirement is likewise met.  "[T]he Third Circuit found that partial assignees can be counted as class members when evaluating whether a class meets Rule 23's numerosity requirement." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 06-0620, 2020 WL 5211035, at *10 (E.D. Pa. Sept. 1, 2020), citing, *In re Modafinil Antitrust Litigation*, 837 F.3d 238, 251-52 (3d Cir. 2016)).  Here, the proposed class consists of 16,710 members – Atlas as assignee for 16,705 assignors plus the Individual Plaintiffs.  Thus, the number of proposed class members exceeds the 100 members necessary to satisfy the numerosity requirement for purposes of CAFA jurisdiction.

60.     Lastly, while CAFA requires that the suit be filed under state law analogue of Rule 23, the analogous state law need not be pled in the complaint to satisfy CAFA.  That is because, if courts "interpreted 'any civil action filed under Rule 23' or a state-law analogue to refer only to cases that specifically mention Rule 23 or a state-law analogue," then "a plaintiff could avoid federal jurisdiction for a lawsuit that resembles a class action in all respects simply by omitting from the complaint the name of the rule or statute under which she proceeds." *Williams v. Employers Mutual Casualty Company*, 845 F.3d 891, 901 (8th Cir. 2017).  *See also*, *Badeaux v. Goodell*, 358 F. Supp. 3d 562, 567 (E.D. La. 2019) ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class action.").  Accordingly, "[i]f a complaint does not satisfy CAFA's jurisdictional requirements on its face, [courts] must cut through any pleading artifice to identify whether the case is in substance an interstate class action."  *Erie Insurance Exchange v. Erie Indemnity Company*, 68 F.4th 815, 819 (3d Cir. 2023).

61.     Here, the Complaint is "in substance a class action, . . . notwithstanding [Plaintiffs'] artificial attempt to disguise the true nature of the suit." *Addison Automatics, Inc. v.*

*Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013) (denying remand under CAFA where plaintiff, an assignee of class rights, unsuccessfully attempted to omit reference to Rule 23 in the pleadings to avoid federal jurisdiction).  Plaintiffs' decision not to cite a Rule 23-analogue in the Complaint does not "disguise the true nature of the suit."  Atlas can only bring this suit in its capacity as the assignee for the claims of 16,705 assignors.  In that capacity, Atlas purports to bring claims on behalf of 16,705 individuals (numerosity), alleges commonality among the claims, and purports to present this case as one in which joinder of nearly 20,000 is not impracticable or impossible[4].  Further, although Plaintiffs do not cite any joinder rule, the Complaint does not demonstrate how Plaintiffs could join 16,705 claims in a single suit, absent the class action mechanism.

62.     Thus, all of the requirements for CAFA jurisdiction over a class action have been met.

63.     In the alternative, or in addition, to finding that this is a class action under CAFA, removal is proper because the instant case is a "mass action" under CAFA.  Federal jurisdiction exists under CAFA for a mass action that satisfies (1) the class action requirements of (a) minimal diversity and (b) the $5,000,000 aggregate amount-in-controversy; (2) numerosity for a mass action; and (3) the $75,000 individual amount-in-controversy requirement.

64.     All of these elements, including the $75,000 individual amount-in-controversy requirement, have been discussed at length *supra*.  Thus, this Court may separately find that it has jurisdiction in the instant case as it is a "mass action" under CAFA.

65.     Finally, none of the exceptions to CAFA apply.  CAFA provides two mandatory exceptions and one discretionary exception to the application of federal jurisdiction for class

---

[4] CREXI does not concede that Plaintiffs have established any element of class certification.

actions.  28 U.S.C. § 1332(d)(3)-(4).  None of these exceptions applies here.  Each CAFA exception requires, as a starting point, an in-state defendant.  CREXI is, as shown above, a citizen of Delaware and California.

66.    Nor do any of the exceptions for federal jurisdiction over a "mass action" apply here.  28 U.S.C. § 1332(d)(11)(B)(ii).

**WHEREFORE**, CREXI respectfully requests that the State Court Action be removed from the Superior Court of New Jersey, Morris County to the United States District Court for the District of New Jersey.

DENTONS US LLP


By: */s/ Stephen M. Turner*
Stephen M. Turner, Esq.
stephen.turner@dentons.com

*Attorney for Defendant*
*Commercial Real Estate Exchange, Inc.*

Dated: Short Hills, New Jersey
          March 21, 2024

# EXHIBIT A

**GENOVA BURNS LLC**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
494 Broad Street
Newark, New Jersey 07102
Tel.: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

*Attorneys for Plaintiffs Atlas Data Privacy
Corporation, Jane Doe-1, a law
enforcement officer, Jane Doe-2, a law
enforcement officer, Scott Maloney, Justyna
Maloney, and Peter Andreyev*

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

|  |  |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, SCOTT MALONEY, JUSTYNA MALONEY, and PETER ANDREYEV, <br><br> Plaintiffs, <br> v. <br><br> COMMERCIAL REAL ESTATE EXCHANGE, INC., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, MORRIS COUNTY DOCKET NO.: MRS-L-_____-24 <br><br> <u>**CIVIL ACTION**</u> <br><br> **COMPLAINT** |

Plaintiffs Atlas Data Privacy Corporation ("Atlas") as the assignee of individuals who are Covered Persons under Daniel's Law along with Jane Doe-1 (a law enforcement officer), Jane Doe-2 (a law enforcement officer), Scott Maloney, Justyna Maloney and Peter Andreyev, (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

1

## INTRODUCTION

1.     In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure.  As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors – and their families – with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2.     This complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law.  Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

3.     The Legislature and Governor unanimously agree that the basic safety of those who serve – and their families – must be assured.  Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve.  Our judges, law enforcement officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4.     With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law.  Consistent with the statutory provisions, Atlas brings this action as an assignee for certain individuals, including many family members of law enforcement officers and prosecutors.  Plaintiffs seek all available injunctive relief

and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## **BACKGROUND**

### **Passage of Daniel's Law in New Jersey**

5.     In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents.  By the time his mother, a Judge, came to the door to check on what happened, the killer was gone.  But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.     During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman.  Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

7.     Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

**New Jersey Passes Daniel's Law in 2020**

8.      In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* <u>N.J.S.A.</u> 47:1A-1, et seq. and <u>N.J.S.A</u> 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

9.      Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."  Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

10.      Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an

oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[2]

11.     The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers.  It allowed federal judges to redact their personal information displayed on federal government internet sites.

12.     The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**Violence Against Police Officers and Judges Has Not Stopped**

13.     Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]

14.     More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[6]  The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.
[5] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com).
[6] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN.
[7] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN.

## THE PARTIES

### The Individual Plaintiffs

15.     Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey.  Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state.  Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence.  In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified.  Officer Doe-1 lives in the home with her spouse and their young child.  Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside.  Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address.  Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

16.     Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children.  Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate.  The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder.  This death threat was investigated and considered credible enough to result in a successful criminal prosecution.  Part of Officer Doe-2's current duties include working in her

correctional facility's law library, where inmates have access to the Internet including online data broker websites and services.  Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff.  The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

17.     Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department.  They live together in New Jersey with their two young children.  In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway.  The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers.  A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved.  In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed.  Overall, the encounter was routine and ended uneventfully.

18.     The resulting video footage was selectively edited and posted to YouTube.  Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video.  Sergeant Maloney was quickly identified by

7

viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer.  Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

19.     One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood."  The unknown messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information.  Sergeant Maloney refused to comply with any demands.  He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand.  In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

20.     Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police. Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest.  Officer Maloney and her two young children were at home at the time.

21.     Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department.  Officer Andreyev currently services as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state.  During the course of his law

enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm. whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**Plaintiff Atlas and its Assignors**

22.     Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

23.     As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 16,705 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

24.     The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

25.     As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

26.     Defendants have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

27.     In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

28.     Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons.  Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

29.     Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a covered person under Daniel's Law.  Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:

## How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

1   **We identify** data brokers that may be disclosing your personal information. As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

2   **You select** the data brokers to whom you want to send takedown notices. We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

3   **You review** takedown notice templates. AtlasMail provides you with templates for takedown notice emails.

4   **You send** takedown notices. Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

**Back**                                                                 **Next**

30.      AtlasMail is an email service operated by Atlas.  Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use.  A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:

## How AtlasMail Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your sensitive personal information.

Atlas has created an email service, called **AtlasMail**, for its members to use for this purpose.

✓  Upon completing this signup process, a new email account will be created for your personal use. It will be:
    **john.doe23@atlasmail.com**

✓  You can access this email account from within the Atlas web application.

✓  This email account belongs to you and you can use it however you want, within certain anti-spam and similar limitations imposed by our terms of service.

Back                                                                    Next

31.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to.  On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices.  If they choose not to send takedown notices to the recommended list, they can select individual recipients at a later page (as shown in the example copied below).  Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.



32.     Any reply or response back from a data broker to the law enforcement officer or other Covered Person is received and displayed in their AtlasMail inbox.  AtlasMail is a fully featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:





33.     With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.  This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight.  Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

**Defendants**

34.     Defendant Commercial Real Estate Exchange, Inc. is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

35.     Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

36.     Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include:

crexi.com

37.     In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).  The following is a redacted example of the detailed information provided by Defendants,[8] in violation of Daniel's Law:

---

[8] Consistent with the mandate of Daniel's Law and the public policy considerations underpinning Rule 1:38-7, personal information in the search results has been redacted from the exemplar screenshots included herein.



17

38.     Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

## JURISDICTION AND VENUE

39.     This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

40.     Venue is proper pursuant to R. 4:3-2, in that Morris County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business.  In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

41.     As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

42.     Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

43.     Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

44.     This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver,

transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

45.     Daniel's Law was amended in 2023, as P.L. 2023, c. 113.  The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

46.     Certain provisions of the amended law, including changes to <u>N.J.S.A.</u> 56:8-166.1, went into effect immediately.

47.     As of July 20, 2023, Daniel's Law as codified in <u>N.J.S.A.</u> 56:8-166.1 provided:[9]

3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.

b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.

c. The court shall award:

(1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorney's fees and other litigation costs reasonably incurred; and

(4) any other preliminary and equitable relief as the court determines to be appropriate.

d.  For the purposes of this section:

…"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include

---

[9] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

48. Starting on or about January 18, 2024 each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

49. For example, a true and correct copy of the email directly from Plaintiff Andreyev (with personal information redacted) is pasted here:

## Data Subject Request – Redaction/nondisclosure Request

| To | privacy@crexi.com |
|----|-------------------|
| From | Peter Andreyev <██████████@atlasmail.com> |
| Date | Mon, Jan 22, 2024 10:47 AM |

Crexi
January 22, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: Peter Andreyev

Home ███████████████████████████████

Sincerely,
Peter Andreyev

50.     Defendants failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.

51.     Even as of the date of this filing, Defendants still refuse to comply with Daniel's Law.  Protected information of the Individual Plaintiffs and those Covered Persons who assigned Atlas their Daniel's Law claims against Defendants remains available from Defendants using Defendants' search tools or other means of disclosure.

52.     All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

53.     The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

## COUNT ONE

### (Daniel's Law)

54.     The allegations of the Complaint set forth above are included herein as if set forth at length.

55.     The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

56.     Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

57.     As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information (including home addresses and/or unpublished home telephone

numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

58.     Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

59.     As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

60.     As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information of the Individual Plaintiffs and the Covered Persons remains disclosed or otherwise made available despite proper requests for nondisclosure in violation of Daniel's Law. As such, Plaintiffs request that the Court enter all appropriate legal and equitable relief.

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A.  Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B.  Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C.  Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D.  Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E.  Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F.  Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G.  Awarding such other and further relief against Defendants as the Court deems equitable and just.

Respectfully Submitted,

**GENOVA BURNS LLC**

Dated: February 9, 2024          By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh
Kathleen Barnett Einhorn
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
*Attorneys for Plaintiffs*

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

(*pro hac vice motions to be filed*)

## DESIGNATION OF TRIAL COUNSEL

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

**GENOVA BURNS LLC**

Dated: February 9, 2024                    By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief.  Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated.  Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**GENOVA BURNS LLC**

Dated: February 9, 2024                    By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

24

## <u>CERTIFICATION PURSUANT TO RULE 1:38-7(b)</u>

Pursuant to <u>Rule</u> 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

**GENOVA BURNS LLC**

Dated: February 9, 2024          By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

25

# Civil Case Information Statement

**Case Details: MORRIS | Civil Part Docket# L-000271-24**

**Case Caption:** ATLAS DATA PRIVACY C ORPORATIO  VS
COMMERCIAL REA

**Case Initiation Date:** 02/09/2024

**Attorney Name:** RAJIV D PARIKH

**Firm Name:** GENOVA BURNS LLC

**Address:** 494 BROAD ST 6TH FL

NEWARK NJ 07102

**Phone:** 9735330777

**Name of Party:** PLAINTIFF : ATLAS DATA PRIVACY
CORPORATION

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** OTHER Daniel's Law

**Document Type:** Complaint

**Jury Demand:** NONE

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: ATLAS DATA PRIVACY
CORPORATION?** NO

**Are sexual abuse claims alleged by: JANE DOE 1?** NO

**Are sexual abuse claims alleged by: JANE DOE 2?** NO

**Are sexual abuse claims alleged by: SCOTT MALONEY?** NO

**Are sexual abuse claims alleged by: JUSTYNA MALONEY?** NO

**Are sexual abuse claims alleged by: PETER ANDREYEV?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

02/09/2024                                                                    /s/ RAJIV D PARIKH
Dated                                                                        Signed

# EXHIBIT B

Job # <u>10478986</u>
Ref # <u>20240222095900</u>

# Affidavit of Process Server

<u>In The Superior Court of New Jersey in and for Morris County, Law Division</u>
(NAME OF COURT)

| Atlas Data Privacy Corporation, as assignee of individuals who are Covered Persons, et al | VS Commercial Real Estate Exchange, Inc., et al | MRS-L-000271-24 |
|---|---|---|
| PLAINTIFF/PETITIONER | DEFENDANT/RESPONDENT | CASE NUMBER |

I <u>Sharlene Brooks</u>, being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized to perform said service.

Service: I served _____ <u>Commercial Real Estate Exchange, Inc.</u> _____
NAME OF PERSON / ENTITY BEING SERVED

with (list documents) <u>Letter; Summons; Document Preservation Notice; First Request for the Production of Documents; First Set of Interrogatories; Complaint; Track Assignment Notice; Case Information Sheet (Received Feb 22, 2024 at 11:58am EST)</u>
by leaving with <u>Left in the presence of Donna "Doe", registered agent representative (per agent policy they will no longer provide a name for acceptance). All legal documents must be left in the basket at front desk.</u>
NAME/RELATIONSHIP/TITLE

Service Address: _____ <u>Corporation Service Company, Registered Agent 251 Little Falls Drive, Wilmington, DE 19808</u>

On _____ <u>Thu, Feb 22 2024</u> _____ AT _____ <u>01:53 PM</u> _____
DATE                                                                          TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on _____
DATE

from _____
CITY          STATE          ZIP

Manner of Service:

☐ **Personal:** By personally delivering copies to the person being served.
☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of 18 and explaining the general nature of the papers.
☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☒ **Corporate:** By personally delivering copies to the person named above.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.
☐ Inquired if subject was a member of the U.S. Military and was informed they are not.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ **Unknown at Address**   ☐ **Moved, Left no Forwarding**   ☐ **Service Cancelled by Litigant**   ☐ **Unable to Serve in Timely Fashion**
☐ **Address Does Not Exist**   ☐ **Other** _____

**Description:** Age <u>57</u> Sex <u>Female</u> Race <u>Caucasian</u> Height <u>5'6"</u> Weight <u>150 lb</u> Hair <u>Brown</u> Beard _____ Glasses _____

Date: <u>February 23, 2024</u>

_____
SIGNATURE OF PROCESS SERVER

Subscribed and sworn before me a Notary Public of the State of Delaware on <u>February 23, 2024</u> (Date)

_____
SIGNATURE OF NOTARY PUBLIC
NOTARY PUBLIC for the State of Delaware

STUART ANDREW IDELSON
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 15, 2025

# EXHIBIT C

# Delaware

### The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "ATLAS DATA PRIVACY CORPORATION" IS DULY INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE TWENTIETH DAY OF MARCH, A.D. 2024.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL REPORTS HAVE BEEN FILED TO DATE.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "ATLAS DATA PRIVACY CORPORATION" WAS INCORPORATED ON THE TWENTY-SEVENTH DAY OF APRIL, A.D. 2021.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES HAVE BEEN PAID TO DATE.

Jeffrey W. Bullock, Secretary of State

5874663  8300

SR# 20241094633

You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 203073511

Date: 03-20-24

# EXHIBIT D

| Client_Stat | Client_active_dat | Client_tern | Client_com | Client_ef | Agent_Nar | Firm_Id | Firm_Nam | Agent_Stat |
|---|---|---|---|---|---|---|---|---|
| A | 4/11/2023 | | | | Parikh, Raj | 1557 | Genova Bu | A |

| Active_Date | Badge_Nur | agent_tern | Agent_eff_ | Effective_C | Firm_Addr | Phone_Nu | Phone_Nu | Client_Nan |
|---|---|---|---|---|---|---|---|---|
| 4/12/2018 | 1557-7 | | | | 494 Broad St | ,Newark,NJ 07102 | | Atlas Priva |

| City | State | Zip | firm_fullname |
|------|-------|-----|---------------|
| Newark | NJ | 7102 | Genova Burns LLC<br/>494 Broad St   Newark,NJ 07102 |

# EXHIBIT E



# ANNUAL REPORT
# OF
# GOVERNMENTAL AFFAIRS AGENT

## FORM L1-A
## Reporting For Calendar Year 2023

ELEC Received

Feb 14 2024
03:36 PM

**NEW JERSEY ELECTION LAW ENFORCEMENT COMMISSION**
P.O. Box 185, Trenton, NJ 08625-0185
Phone: (609) 292-8700
Website: www.elec.nj.gov

FOR STATE USE ONLY

Amendment ☐

---

Name of Governmental Affairs Agent or Governmental Affairs Agent Firm:

**Genova Burns LLC**

Business Address: **494 Broad Street**

City: **Newark**    State **NJ**    Zip Code **07102**

*(Area Code) Telephone Number **973-533-0777**

**1.** Provide the following information regarding the Governmental Affairs Agent(s) on whose behalf this report is filed.

1.   Name   **Angelo J. Genova**

Badge Number   **1557-1**    Occupation or Business   **Attorney**

Business Address   **494 Broad Street**

City **Newark**    State **NJ**    Zip Code **07102**

*(Area Code) Telephone Number   **973-533-0777**

2.   Name   **Nicholas R. Amato**

Badge Number   **1557-5**    Occupation or Business   **Attorney**

Business Address   **494 Broad Street**

City **Newark**    State **NJ**    Zip Code **07102**

*(Area Code) Telephone Number   **973-533-0777**

3.   Name   **Rajiv D. Parikh**

Badge Number   **1557-7**    Occupation or Business   **Attorney**

Business Address   **494 Broad Street**

City **Newark**    State **NJ**    Zip Code **07102**

*(Area Code) Telephone Number   **973-533-0777**

4.   Name   **Avi D. Kelin**

Badge Number   **1557-8**    Occupation or Business   **Attorney**

Business Address   **494 Broad Street**

City **Newark**    State **NJ**    Zip Code **07102**

*(Area Code) Telephone Number   **973-533-0777**

---

5.  Name   William F. Megna

Badge Number   1557-9                              Occupation or Business   Attorney

Business Address   494 Broad Street

City   Newark                                                        State   NJ        Zip Code   07102

*(Area Code) Telephone Number   973-533-0777

*Leave this field blank if your telephone number is unlisted. Pursuant to N.J.S.A. 47:1A-1.1, an unlisted telephone number is not a public record and must not be provided on this form.

**2.** Provide the following information concerning all Represented Entities:

NOTE:  Represented Entities who designate this report to include all of their activity must file Form L-2.

| RECEIPT AMOUNT |
| --- |

**PURPOSE:**  To report all fees, retainers, allowances, reimbursement of expenses, or other compensation received from Represented Entities for the purpose of influencing legislation, regulations, governmental processes, or communicating with the general public.

**NOTE:**  Report only the pro rata share of each receipt which is related to influencing legislation, regulations, governmental processes, or communicating with the general public.

---

1.  Name of Represented Entity    **Scientific Games Corp**

Business Address    **6650 S. El Camino Road**

City  **Las Vegas**    State **NV**  Zip Code **89118**

Type of Business  **Gaming Services**

**RECEIPT AMOUNT**
**0.00**

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

2.  Name of Represented Entity    **New Meadowlands Racetrack LLC**

Business Address    **1 Racetrack Drive**

City  **East Rutherford**    State **NJ**  Zip Code **07073**

Type of Business  **Racetrack Operator**

**RECEIPT AMOUNT**
**0.00**

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

3.  Name of Represented Entity    **14-16 Burma Road Industrial LLC dba SAK Structures LLC**

Business Address    **14 Burma Road**

City  **Jersey City**    State **NJ**  Zip Code **07305**

Type of Business  **Real Estate**

**RECEIPT AMOUNT**
**0.00**

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

4.  Name of Represented Entity    **BioReference Laboratories, Inc.**

Business Address    **481 Edward H. Ross Drive**

City  **Elmwood Park**    State **NJ**  Zip Code **07407**

Type of Business  **Laboratory Services**

**RECEIPT AMOUNT**
**22,490.00**

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

5. Name of Represented Entity    Atlantic Amateur Hockey Association

Business Address    PO Box 291

City    Ho Ho Kus    State    NJ    Zip Code    07423

**RECEIPT AMOUNT**
0.00

Type of Business    Amateur Hockey Association

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

6. Name of Represented Entity    Association Master Trust

Business Address    636 Morris Turnpike, Ste. 2A

City    Short Hills    State    NJ    Zip Code    07078

**RECEIPT AMOUNT**
0.00

Type of Business    self-funded multiple employer welfare arrangement

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

7. Name of Represented Entity    New Jersey Restaurant and Hospitality Association

Business Address    126 West State Street

City    Trenton    State    NJ    Zip Code    08608

**RECEIPT AMOUNT**
0.00

Type of Business    Trade Association for Restaurant and Hospitality Industry

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

8. Name of Represented Entity    SB Hoboken Propco, LLC

Business Address    175 Belgrove Drive

City    Kearny    State    NJ    Zip Code    07032

**RECEIPT AMOUNT**
0.00

Type of Business    Real Estate

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

9. Name of Represented Entity    EDP Soccer

Business Address    8 Cornwall Court

City    East Brunswick    State    NJ    Zip Code    08816

**RECEIPT AMOUNT**
0.00

Type of Business    Youth Soccer

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

10. Name of Represented Entity   State Fair Group

Business Address   331 Newman Springs Road

City   Red Bank   State   NJ   Zip Code   07701

**RECEIPT AMOUNT**

Type of Business   Operation of Amusement Park

850.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

11. Name of Represented Entity   Parkway Autonomous Inc.

Business Address   146 Wolcott Street

City   Brooklyn   State   NY   Zip Code   11231

**RECEIPT AMOUNT**

Type of Business   Transportation

0.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

12. Name of Represented Entity   New Jersey Democratic State Committee

Business Address   142 W State Street

City   Trenton   State   NJ   Zip Code   08608

**RECEIPT AMOUNT**

Type of Business   Political Party

6,765.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

13. Name of Represented Entity   Atlas Privacy

Business Address   2810 N Church Street, Unit 72500

City   Wilmington   State   DE   Zip Code   19802

**RECEIPT AMOUNT**

Type of Business   Data Privacy

0.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

14. Name of Represented Entity   CEP Renewables

Business Address   331 Newman Springs Road

City   Red Bank   State   NJ   Zip Code   07701

**RECEIPT AMOUNT**

Type of Business   Solar Developer

0.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

## SCHEDULE A

1.  Provide the following information for any Governmental Affairs Agent named in this Annual Report who served as a member of:

> ➤ any independent State authority;

> ➤ any county improvement authority;

> ➤ any municipal utilities authority;

> ➤ any inter-State or bi-State authority as a member from New Jersey; or,

> ➤ any board or commission established by statute or resolution, or by executive order of the Governor, or by the Legislature, or by any Agency, Department or other instrumentality of the State.

(If this question does not apply, move on to question 2.)

Name of Governmental Affairs Agent

Name of Authority, Board, or Commission

Date When Term of Service Expires


Name of Governmental Affairs Agent

Name of Authority, Board, or Commission

Date When Term of Service Expires


Name of Governmental Affairs Agent

Name of Authority, Board, or Commission

Date When Term of Service Expires


Name of Governmental Affairs Agent

Name of Authority, Board, or Commission

Date When Term of Service Expires


2.  Did all Governmental Affairs Agent(s) named in this Annual Report file all Notices of Representation and Quarterly Reports required during the calendar year covered by this Annual Report?

☑ Yes  If "yes," continue on to Schedule B.          ☐ No  If "no," please file the necessary reports immediately.

# SCHEDULE B - SALARY & COMPENSATION

**PURPOSE:** To report the salary and compensation paid to the Governmental Affairs Agents on whose behalf this report is filed. Include the reimbursement of an Agent's expenses in amounts reported.

**NOTE:** Only the pro rata share of each Governmental Affairs Agent's salary and compensation need to be included if the Agent spends only a portion of his/her time on lobbying activity.

| NAME OF GOVERNMENTAL AFFAIRS AGENT | AMOUNT |
|---|---|
| Angelo J. Genova | $ 12,095.00 |
| Nicholas R. Amato | $ 0.00 |
| Rajiv D. Parikh | $ 6,765.00 |
| Avi D. Kelin | $ 11,245.00 |
| William F. Megna | $ 0.00 |
| SCHEDULE B TOTAL $ | 30,105.00 |

# SCHEDULE C - SUPPORT PERSONNEL

**PURPOSE:** To report the costs of support personnel who, over the course of the reporting year, individually spend 450 or more hours supporting the activities of the Governmental Affairs Agent(s).

After determining to which person(s) this applies, report the pro rata share of those costs which are attributable to supporting the activities of the Governmental Affairs Agent(s) in influencing legislation, regulations, governmental processes, or communicating with the general public.

SCHEDULE C TOTAL $ 0.00

# NO SCHEDULE D FOR GOVERNMENTAL AFFAIRS AGENTS

## SCHEDULE E - COMMUNICATION EXPENSES

**PURPOSE:** To report the costs of the preparation and distribution of materials related to influencing legislation, regulations, governmental processes, and conducting communications with the general public.

| EXPENSE | AMOUNT |
|---|---|
| Printed Materials | $ 0.00 |
| Postage | 0.00 |
| Film, Slides, Video, Audio | 0.00 |
| TV - Network | 0.00 |
| TV - Cable | 0.00 |
| Radio | 0.00 |
| Other Broadcast Medium | 0.00 |
| Internet | 0.00 |
| Telephone, Facsimile | 0.00 |
| Pro Rata Overhead Costs of Specific Events Over $100 (*please identify name and date of event*) | |
| | |
| | |
| | |
| | |
| Other (*please describe*): | |
| | |
| | |
| | |
| | |
| **SCHEDULE E TOTAL** $ | 0.00 |

## SCHEDULE F - TRAVEL/LODGING

**PURPOSE:** To report the travel and lodging costs of the Governmental Affairs Agents on whose behalf this report is filed related to influencing legislation, regulations, governmental processes, or communicating with the general public.

| NAME OF GOVERNMENTAL AFFAIRS AGENT | AMOUNT |
|---|---|
| | $ 0.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| **SCHEDULE F TOTAL** $ | 0.00 |

## SCHEDULE G-1 — ITEMIZATION OF BENEFITS WHICH EXCEEDED $25 PER DAY OR $200 PER CALENDAR YEAR TO STATE OFFICIALS AND THEIR IMMEDIATE FAMILY MEMBERS

**PURPOSE:** To report detailed information concerning benefits passed to State officials covered by the Act, as well as the immediate family members of these officials. If the value of a benefit exceeded $25 per day or $200 per calendar year, report below.

*(Select one description item for each entry from the drop down list. When selecting "O - Other", enter a description in the space provided.)*

---

Name of Benefit Recipient _____

Date _____   Description _____  _____  Amount $ _____ 0.00

Name and Address of Payee/Vendor

Name _____

Address _____

City _____   State _____   Zip Code _____

If benefit was reimbursed, please report the date, the description, and the amount of the reimbursement.
Date _____   Amount $ _____

Description _____  _____

---

Name of Benefit Recipient _____

Date _____   Description _____  _____  Amount $ _____

Name and Address of Payee/Vendor

Name _____

Address _____

City _____   State _____   Zip Code _____

If benefit was reimbursed, please report the date, the description, and the amount of the reimbursement.
Date _____   Amount $ _____

Description _____  _____

---

Name of Benefit Recipient _____

Date _____   Description _____  _____  Amount $ _____

Name and Address of Payee/Vendor

Name _____

Address _____

City _____   State _____   Zip Code _____

If benefit was reimbursed, please report the date, the description, and the amount of the reimbursement.
Date _____   Amount $ _____

Description _____  _____

---

Name of Benefit Recipient _____

Date _____   Description _____  _____  Amount $ _____

Name and Address of Payee/Vendor

Name _____

Address _____

City _____   State _____   Zip Code _____

If benefit was reimbursed, please report the date, the description, and the amount of the reimbursement.
Date _____   Amount $ _____

Description _____  _____

---

# SUMMARY OF BENEFIT PASSING

**PURPOSE:** To report the total amount of providing benefits to State officials covered by the Act and their immediate family members.

|  | **SCHEDULE G-1** | | **SCHEDULE G-2*** | | **AMOUNT** |
|---|---|---|---|---|---|
| Entertainment | $ _____ | + $ | 0.00 | = $ | 0.00 |
| Food and Beverage | _____ | + | 0.00 | = | 0.00 |
| Travel | _____ | + | 0.00 | = | 0.00 |
| Lodging | _____ | + | 0.00 | = | 0.00 |
| Honoraria | _____ | + | 0.00 | = | 0.00 |
| Loans | _____ | + | 0.00 | = | 0.00 |
| Gifts | _____ | + | 0.00 | = | 0.00 |
| Other (specify) _____ | | + | 0.00 | = | 0.00 |
| **Total** | $ _____ | + $ | 0.00 | = $ | 0.00 |

**SCHEDULE G-1 AND
SCHEDULE G-2 TOTAL**

\* Enter, by category, the value of benefit passing where the expenditure did NOT exceed the $25/day or $200/calendar year thresholds.

**TOTAL AMOUNT OF REIMBURSED BENEFITS, IF ANY.
DO <u>NOT</u> DEDUCT THIS AMOUNT FROM BENEFIT PASSING AMOUNTS.**          $ _____

# SUMMARY OF LOBBYING EXPENDITURES

**EXPENDITURES**

| | | | |
|---|---|---|---|
| 1. Salary and Compensation | Schedule B Total | $ | 30,105.00 |
| 2. Support Personnel | Schedule C Total | | 0.00 |
| 3. Communication Expenses | Schedule E Total | | 0.00 |
| 4. Travel and Lodging | Schedule F Total | | 0.00 |
| 5. Benefit Passing | Schedule G-1 and Schedule G-2 Total | | 0.00 |
| | **Total Lobbying Expenditures** | $ | 30,105.00 |

# SUMMARY OF TOTAL RECEIPTS FROM REPRESENTED ENTITIES          $ 30,105.00

# CERTIFICATION

This certification shall be signed by either the Governmental Affairs Agent filing this Annual Report on his/her own behalf, or by the Managing or Principal Partner or Chief Executive Officer of the Governmental Affairs Agent Firm.

I, Angelo Genova

*(enter name)*

hereby certify that I am duly authorized by

Genova Burns LLC

*(enter name of firm)*

to file and certify the accuracy and correctness of this Annual Report of Lobbying Activity for calendar year   2023   .
I certify that the statements made herein are true and accurate. I am aware that if any of the foregoing statements are willfully false, I may be subject to punishment.

Registration Number   **********        PIN   **********

Verify Registration Number & PIN

ANGELO J GENOVA                    February 14, 2024
Signature                                    Date

* Your name must appear on the signature line *

# EXHIBIT F

### STATE OF NEW JERSEY
### DEPARTMENT OF THE TREASURY
### DIVISION OF REVENUE AND ENTERPRISE SERVICES
### LONG FORM STANDING WITH OFFICERS AND DIRECTORS

**ATLAS DATA PRIVACY CORPORATION**
*0451071286*

I, the Treasurer of the State of New Jersey, do hereby certify that the above-named Delaware Foreign For-Profit Corporation was registered by this office on January 12, 2024.

As of the date of this certificate, said business continues as an active business in good standing in the State of New Jersey, and its Annual Reports are current.

I further certify that the registered agent and office are:

REGISTERED AGENTS INC.
FIVE GREENTREE CENTRE, 525 ROUTE 73
STE 104
MARLTON, NJ 08053

I further certify that as of the date of this certificate, no officers or directors were on file for this business.



IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal at Trenton, this 19th day of March, 2024.

*Elizabeth Maher Muoio*
*State Treasurer*

Certificate Number : 6151863982

Verify this certificate online at

https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp