# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> BLACKBAUD, INC., et al. | CIVIL ACTION NO. 24-3993 <br> (Hon. Harvey Bartle III) |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> WHITEPAGES, INC., et al. | CIVIL ACTION NO. 24-3998 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> HIYA, INC., et al. | CIVIL ACTION NO. 24-4000 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> WE INFORM, LLC, et al. | CIVIL ACTION NO. 24-4037 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> INFOMATICS, LLC, et al. | CIVIL ACTION NO. 24-4041 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> THE PEOPLE SEARCHERS, LLC, et al. | CIVIL ACTION NO. 24-4045 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>COMMERCIAL REAL ESTATE EXCHANGE, INC., et al. | CIVIL ACTION NO. 24-4073 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>DM GROUP, INC., et al. | CIVIL ACTION NO. 24-4075 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>CARCO GROUP INC., et al. | CIVIL ACTION NO. 24-4077 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>DELUXE CORPORATION, et al. | CIVIL ACTION NO. 24-4080 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>TWILIO INC., et al. | CIVIL ACTION NO. 24-4095 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>QUANTARIUM ALLIANCE, LLC, et al. | CIVIL ACTION NO. 24-4098 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>YARDI SYSTEMS, INC., et al. | CIVIL ACTION NO. 24-4103 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>6SENSE INSIGHTS, INC., et al. | CIVIL ACTION NO. 24-4104 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>LIGHTBOX PARENT, L.P., et al. | CIVIL ACTION NO. 24-4105 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>SEARCH QUARRY, LLC, et al. | CIVIL ACTION NO. 24-4106 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ACXIOM, LLC, et al. | CIVIL ACTION NO. 24-4107 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ENFORMION, LLC, et al. | CIVIL ACTION NO. 24-4110 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>COSTAR GROUP, INC., et al. | CIVIL ACTION NO. 24-4111 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ORACLE INTERNATIONAL CORPORATION, et al. | CIVIL ACTION NO. 24-4112 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>RED VIOLET, INC., et al. | CIVIL ACTION NO. 24-4113 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>RE/MAX, LLC, et al. | CIVIL ACTION NO. 24-4114 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>EPSILON DATA MANAGEMENT, LLC, et al. | CIVIL ACTION NO. 24-4168 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>PEOPLE DATA LABS, INC., et al. | CIVIL ACTION NO. 24-4171 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>LABELS & LISTS, INC | CIVIL ACTION NO. 24-4174 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>CLARITAS, LLC, et al. | CIVIL ACTION NO. 24-4175 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>INNOVIS DATA SOLUTIONS INC., et al. | CIVIL ACTION NO. 24-4176 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ACCURATE APPEND, INC., et al. | CIVIL ACTION NO. 24-4178 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>DATA AXLE, INC., et al. | CIVIL ACTION NO. 24-4181 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>REMINE INC., et al. | CIVIL ACTION NO. 24-4182 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>LUSHA SYSTEMS, INC, et al. | CIVIL ACTION NO. 24-4184 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>TELTECH SYSTEMS, INC., et al. | CIVIL ACTION NO. 24-4217 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>PEOPLECONNECT, INC., et al. | CIVIL ACTION NO. 24-4227 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>CORELOGIC, INC., et al. | CIVIL ACTION NO. 24-4230 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>BLACK KNIGHT TECHNOLOGIES, LLC, et al. | CIVIL ACTION NO. 24-4233 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ZILLOW, INC., et al. | CIVIL ACTION NO. 24-4256 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>EQUIMINE, INC., et al. | CIVIL ACTION NO. 24-4261 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>THOMSON REUTERS CORPORATION, et al. | CIVIL ACTION NO. 24-4269 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>CHOREOGRAPH LLC, et al. | CIVIL ACTION NO. 24-4271 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>TRANSUNION, LLC, et al. | CIVIL ACTION NO. 24-4288 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>MELISSA DATA CORP., et al. | CIVIL ACTION NO. 24-4292 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>EQUIFAX INC., et al. | CIVIL ACTION NO. 24-4298 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>SPOKEO, INC., et al. | CIVIL ACTION NO. 24-4299 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>i360, LLC, et al. | CIVIL ACTION NO. 24-4345 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>TELNYX LLC, et al. | CIVIL ACTION NO. 24-4354 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>GOHUNT, LLC, et al. | CIVIL ACTION NO. 24-4380 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ACCUZIP, INC., et al. | CIVIL ACTION NO. 24-4383 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>SYNAPTIX TECHNOLOGY, LLC, et al. | CIVIL ACTION NO. 24-4385 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>JOY ROCKWELL ENTERPRISES, INC., et al. | CIVIL ACTION NO. 24-4389 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>FORTNOFF FINANCIAL, LLC, et al. | CIVIL ACTION NO. 24-4390 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>MYHERITAGE, LTD., et al. | CIVIL ACTION NO. 24-4392 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>E-MERGES.COM, INC. | CIVIL ACTION NO. 24-4434 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>WILAND, INC., et al. | CIVIL ACTION NO. 24-4442 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ATDATA, LLC, et al. | CIVIL ACTION NO. 24-4447 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>PRECISELY HOLDINGS, LLC, et al. | CIVIL ACTION NO. 24-4571 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>NUWBER, INC., et al. | CIVIL ACTION NO. 24-4609 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ROCKETREACH LLC, et al. | CIVIL ACTION NO. 24-4664 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>OUTSIDE INTERACTIVE INC., et al. | CIVIL ACTION NO. 24-4696 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>VALASSIS DIGITAL CORP., et al. | CIVIL ACTION NO. 24-4770 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>THE LIFETIME VALUE CO. LLC, et al. | CIVIL ACTION NO. 24-4850 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>BELLES CAMP COMMUNICATIONS, INC., et al. | CIVIL ACTION NO. 24-4949 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>FIRST AMERICAN FINANCIAL CORPORATION., et al. | CIVIL ACTION NO. 24-5334 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>PROPERTYRADAR, INC., et al. | CIVIL ACTION NO. 24-5600 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>THE ALESCO GROUP, L.L.C., et al. | CIVIL ACTION NO. 24-5656 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>SEARCHBUG, INC., et al. | CIVIL ACTION NO. 24-5658 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>AMERILIST, INC. et al. | CIVIL ACTION NO. 24-5775 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>LEXISNEXIS RISK DATA MANAGEMENT, LLC, et al. | CIVIL ACTION<br>NO. 24-6160 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>US DATA CORPORATION, et al. | CIVIL ACTION<br>NO. 24-7324 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**<u>CONSOLIDATED MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

# TABLE OF CONTENTS

I.    Introduction ..................................................................................................1

II.   Argument .....................................................................................................3

      A.    A Facial Challenge Is Appropriate Here, and Defendants Meet
            the Required Standard ................................................................................3

      B.    Daniel's Law Is a Content-Based Speech Restriction Subject to
            Strict Scrutiny ..........................................................................................9

            1.    Daniel's Law Regulates Speech ................................................................9

            2.    Daniel's Law Is Content-Based ................................................................12

            3.    Daniel's Law Does Not Regulate Commercial Speech ...........16

            4.    There Is No Special Privacy Exception to Strict Scrutiny
                  for Content-Based Speech Restrictions ...................................20

      C.    Daniel's Law Fails Any Level of Scrutiny .........................................23

            1.    Daniel's Law Fails Strict Scrutiny ...........................................24

            2.    Daniel's Law Fails Intermediate Scrutiny In Any Event.........26

            3.    Daniel's Law is Not Subject to a Narrowing Construction ......33

      D.    Daniel's Law Is Unconstitutionally Vague .........................................36

            1.    Defendants Have Standing to Bring a Vagueness
                  Challenge ......................................................................37

            2.    Daniel's Law's Vague Language and Enforcement
                  Mechanism Risk Chilling Speech .............................................37

      E.    The Tenth Amendment Does Not Save Daniel's Law ........................40

III.  Conclusion ................................................................................................40

# TABLE OF AUTHORITIES

## CASES

*ACLU v. Mukasey*,
534 F.3d 181 (3d Cir. 2008) .................................................... 24, 26, 38

*Alario v. Knudsen*,
704 F. Supp. 3d 1061 (D. Mont. 2023).................................................21

*Allen v. Vertafore, Inc.*,
28 F.4th 613 (5th Cir. 2022) ...............................................................36

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021)..............................................................................9

*Ashcroft v. ACLU*,
542 U.S. 656 (2004)..............................................................................5

*Barclift v. Keystone Credit Servs., LLC*,
93 F.4th 136 (3d Cir. 2024) ................................................................22

*Barr v. Am. Ass'n of Pol. Consultants*,
591 U.S. 610 (2020)............................................................................21

*Bartnicki v. Vopper*,
532 U.S. 514 (2001).......................................................................9, 15

*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*,
482 U.S. 569 (1987)............................................................................40

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983) .......................................................................18, 32

*Brayshaw v. City of Tallahassee*,
709 F. Supp. 2d 1244 (N.D. Fla. 2010) .........................................10, 31

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011).........................................................................1, 5

*Bruni v. City of Pittsburgh*,
824 F.3d 353 (3d Cir. 2016) ........................................................ 4, 5, 6

*Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*,
    101 F.4th 266 (3d Cir. 2024) ................................................................ 13, 14, 24

*Cent. Hudson Gas & Elec. Co. v. Pub. Serv. Comm'n of N.Y.*,
    447 U.S. 557 (1980)........................................................................16

*Citizens United v. FEC*,
    558 U.S. 310 (2010)..........................................................................5

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
    596 U.S. 61 (2022) ................................................................. 12, 13, 14

*City of Chicago v. Morales*,
    527 U.S. 41 (1993)........................................................................37

*Clark v. Cmty. for Creative Non-Violence*,
    468 U.S. 288 (1984)........................................................................11

*Counterman v. Colorado*,
    600 U.S. 66 (2023)........................................................................25

*Dahlstrom v. Sun-Times Media, LLC*,
    777 F.3d 937 (7th Cir. 2015) ............................................................ 10, 14, 15

*Dex Media W., Inc. v. City of Seattle*,
    696 F.3d 952 (9th Cir. 2012) ...............................................................18

*Doe v. City of Albuquerque*,
    667 F.3d 1111 (10th Cir. 2012) ............................................................4

*Doe v. Schorn*,
    2024 WL 128210 (E.D. Pa. Jan. 10, 2024)......................................................21

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
    472 U.S. 749 (1985)........................................................................23

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012)........................................................................38

*Fla. Star v. B.J.F.*,
    491 U.S. 524 (1989)............................................................... 23, 29, 31

*Free Speech Coalition, Inc. v. Attorney General, United States*,
    974 F.3d 408 (3d Cir. 2020) ...................................................................29

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)...............................................................................39

*Greater Philadelphia Chamber of Commerce v. City of Philadelphia*,
    949 F.3d 116 (3d Cir. 2020) ........................................................... 17, 18

*Green v. U.S. Dep't of Just.*,
    111 F.4th 81 (D.C. Cir. 2024).................................................................11

*Harris v. Quinn*,
    573 U.S. 616 (2014)...............................................................................17

*Hill v. Colorado*,
    530 U.S. 703 (2000)...............................................................................32

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010)...................................................................................37

*IMDb.com Inc. v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) ....................................... 10, 15, 18, 21

*In re Nickleodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3rd Cir. 2016) .................................................................22

*In re Reddit, Inc.*,
    2024 WL 477519 (N.D. Cal. Feb. 7, 2024) .........................................12

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
    119 F.3d 1070 (3d Cir. 1997) ................................................................24

*Kratovil v. City of New Brunswick*,
    2024 WL 1826867 (N.J. Super. Ct. App. Div. Apr. 26, 2024)............16

*Larson v. City & Cnty of San Francisco*,
    192 Cal. App. 4th 1263 (2011) ..............................................................33

*Lorillard Tobacco Co. v. Reilly*,
    533 U.S. 525 (2001)...............................................................................16

iv

*Loughrin v. United States*,
    573 U.S. 351 (2014)........................................................................36

*Mainstream Mktg. Servs., Inc. v. FTC*,
    358 F.3d 1228 (10th Cir. 2004) ......................................................32

*Moody v. NetChoice, LLC*,
    144 S. Ct. 2383 (2024)........................................................ 1, 6, 7, 8

*NetChoice, LLC v. Reyes*,
    --- F. Supp. 3d ---, 2024 WL 4135626 (D. Utah Sept. 10, 2024) ................. 8, 13

*Ostergren v. Cuccinelli*,
    615 F.3d 263 (4th Cir. 2010) ..........................................................31

*Packingham v. North Carolina*,
    582 U.S. 98 (2017)...........................................................................5

*Pearson v. Edgar*,
    153 F.3d 397 (7th Cir. 1998) ..........................................................33

*Pellegrino v. U.S. Transp. Sec. Admin.*,
    937 F.3d 164 (3d Cir. 2019) ...........................................................35

*Pitt News v. Pappert*,
    379 F.3d 96 (3d Cir. 2004) ........................................... 27, 28, 31, 34

*Publius v. Boyer-Vine*,
    237 F. Supp. 3d 997 (E.D. Cal. 2017) ...................................... 10, 29

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992).........................................................................12

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)................................................... 5, 15, 23, 30

*Reno v. ACLU*,
    *521 U. S. 844 (1997)* ......................................................................37

*Rubin v. Coors Brewing Co.*,
    514 U.S. 476 (1995).........................................................................16

v

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
  547 U.S. 47 (2006) ............................................................................11

*Sable Commc'ns of Cal., Inc. v. FCC*,
  492 U.S. 115 (1989) ..................................................................... 5, 25

*Schrader v. Dist. Att'y of York County*,
  74 F.4th 120 (3d Cir. 2023) ................................................... passim

*Shalala v. Ill. Council on Long Term Care, Inc.*,
  529 U.S. 1 (2000) ..............................................................................8

*Sheehan v. Gregoire*,
  272 F.Supp.2d 1135 (W.D. Wash. 2003) ........................................15

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
  502 U.S. 105 (1991) ..........................................................................5

*Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*,
  56 F.4th 400 (6th Cir. 2022) .............................................................4

*Snyder v. Phelps*,
  562 U.S. 443 (2011) ........................................................................23

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ................................................................ passim

*Spence v. Washington*,
  418 U.S. 405 (1974) ........................................................................11

*Stark v. Patreon, Inc.*,
  656 F. Supp. 3d 1018 (N.D. Cal. 2023) ..........................................19

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*,
  309 F.3d 144 (3d Cir. 2002) .................................................... 10, 11

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,
  588 U.S. 504 (2019) ........................................................................40

*Troster v. Pa. State Dep't of Corr.*,
  65 F.3d 1086 (3d Cir. 1995) ...........................................................11

*United States v. O'Brien*,
  391 U.S. 367 (1968) ...........................................................................11

*United States v. Playboy Ent. Grp., Inc.*,
  529 U.S. 803 (2000) ...........................................................................21

*United States v. Rahimi*,
  144 S. Ct. 1889 (2024) .........................................................................4

*United States v. Williams*,
  553 U.S. 285 (2008) ...........................................................................37

*United States. v. Stevens*,
  533 F.3d 218 (3d Cir. 2008), *aff'd*, 559 U.S. 460 (2010) ...................5

*Vidal v. Elster*,
  602 U.S. 286 (2024) ...................................................................... 2, 20

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982) ................................................................... 37, 38

*Williams-Yulee v. Fla. Bar*,
  575 U.S. 433 (2015) ...........................................................................30

*Yates v. Pinellas & Oncology, P.A.*,
  21 F.4th 1288 (11th Cir. 2021) ...........................................................29

*Yim v. City of Seattle*,
  63 F.4th 783 (9th Cir. 2023) ...............................................................26

### STATUTES

18 U.S.C. § 2511(3)(a) ............................................................................12

18 U.S.C. § 2710(a)(3), (b) ....................................................................23

47 U.S.C. § 227(c)(1) ..............................................................................23

Cal. Pub. Util Code § 2891.1(h) .............................................................40

Digital Millennium Copyright Act .........................................................11

HIPAA, Pub. L. 104–191, 110 Stat. 1936 ..............................................23

Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ....................... 23

N.J.S.A. 47:1B-3(5) ................................................................................. 26

N.J.S.A. 56:8-166.1(a)(1) ......................................................................... 17

N.J.S.A. 56:8-166.1(d) ...................................................................... 17, 35, 36

N.J.S.A. 56:8-166.3 .................................................................................. 22

## I.    INTRODUCTION

At its core, this is a simple case:  Daniel's Law bans a particular category of speech—disclosure of certain addresses and phone numbers—but not others.  That makes it a content-based restriction subject to strict scrutiny, which is "a demanding standard" that only the "rare" law will survive.  *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011).  To do so, a speech ban must be the least restrictive means of achieving the state's goal.  But the category of speech Daniel's Law prohibits is far broader than necessary to achieve the state's interest in ensuring the safety of certain public officials.  Accordingly, the law must be invalidated.

The opposition briefs kick up a lot of dust to obscure this straightforward analysis, but their arguments are ultimately easy to see through. Most notably, neither Plaintiffs nor the New Jersey Attorney General ("AG") seriously contend that this is the "rare" case in which a law can satisfy strict scrutiny.  Instead, they rely on an array of threshold arguments for why strict scrutiny should not apply in the first place—each of which fails.

*First*, the opposition briefs argue that Daniel's Law cannot be challenged on a facial basis.  But that argument vastly overreads the Supreme Court's recent decision in *Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024), and ignores well-settled Supreme Court and Third Circuit precedent facially invalidating content-based speech restrictions due to insufficient tailoring.

1

*Second*, although the AG concedes this point, the Plaintiffs' brief asserts that Daniel's Law regulates only "data," not protected speech. But the Supreme Court has made unequivocally clear that "dissemination of information [is] speech within the meaning of the First Amendment," *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). And a large body of case law has applied that rule to laws just like this one.

*Third*, the opposition briefs argue that, even if the First Amendment applies, Daniel's Law is subject to intermediate—not strict—scrutiny. But none of their arguments on that front is persuasive. They argue that Daniel's Law is content-neutral, but that is self-evidently wrong given the law's application to only a particular kind of speech. They assert that Daniel's Law is a restriction on commercial speech, when, in reality, it is a blanket ban without any such limitation. And, in a last-ditch effort, the opposition briefs make the sweeping claim that "privacy statutes" are subject to relaxed constitutional scrutiny, relying on *Vidal v. Elster*, 602 U.S. 286 (2024)—a trademark case with no link to privacy. *Vidal* did not create a freestanding history-and-tradition defense to all First Amendment claims—and Daniel's Law would not qualify for such a defense in any event.

Thus, despite the opposition briefs' efforts to evade it, Daniel's Law is subject to strict scrutiny. And because the opposition briefs fail to meaningfully argue that the law satisfies strict scrutiny, the Court can stop there and grant Defendants' motion. At any rate, Daniel's Law cannot survive *any* level of heightened

constitutional scrutiny.  As Defendants' motion to dismiss showed, Daniel's Law is substantially over- and under-inclusive—and the opposition briefs' extensive efforts to cure those defects through narrowing constructions fail and only underscore the law's infirmity as written.

No one denies that Daniel's Law was a well-intentioned effort to protect public officials from harm.  But noble intentions are not a free pass to ignore the Constitution.  Even if their purposes are proper, content-based restrictions on speech must be narrowly tailored.  If they are not so tailored, they are invalid restrictions on speech and must be struck down.  Daniel's Law is not sufficiently tailored and cannot survive in its current form.  This Court should grant Defendants' motion to dismiss with prejudice—and the New Jersey Legislature must go back to the drawing board and try to come up with a properly tailored version of Daniel's Law.

## II.    ARGUMENT

### A.    A Facial Challenge Is Appropriate Here, and Defendants Meet the Required Standard

The opposition briefs first contend that Defendants cannot successfully mount a facial challenge because they cannot demonstrate that Daniel's Law is unconstitutional in all of its applications.  Pls. Br. 6–8; AG Br. 14–17.  That argument fundamentally misunderstands how facial challenges based on insufficient tailoring work.

3

Indeed, the Third Circuit has rejected the exact arguments that the opposition briefs make on this point.  As an initial matter, while the Supreme Court has held that *some* facial challenges based on other constitutional provisions are subject to the "no set of circumstances" test, *see, e.g.*, *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) (Second Amendment), "[i]n the First Amendment context, the Supreme Court has softened that daunting standard," allowing for facial invalidation "if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *Bruni v. City of Pittsburgh*, 824 F.3d 353, 362 (3d Cir. 2016) (citation omitted).  Regardless, the difference is not significant here because, as the Third Circuit has explained, a broad prohibition on speech that fails strict scrutiny satisfies *either* standard.  That is because "[w]here a statute fails the relevant constitutional test (such as strict scrutiny . . . ), it can no longer be constitutionally applied to *anyone*—and thus there is 'no set of circumstances' in which the statute would be valid."  *Id.* (emphasis added) (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012)); *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 407 (6th Cir. 2022) ("[I]f a statute is not narrowly tailored, it cannot be constitutionally applied to anyone[.]").  For those types of facial challenges, the "no set of circumstances" language does not "set[] forth a test" but instead "describ[es] the result of a facial challenge in which a statute fails to satisfy the appropriate constitutional standard."  *Doe*, 667 F.3d at 1127.

4

Thus, as the Third Circuit further explained in *Bruni*, "[t]he [Supreme] Court has often considered facial challenges simply by applying the relevant constitutional test to the challenged statute, without trying to dream up whether or not there exists some hypothetical situation in which application of the statute might be valid." *Id.* at 363 (collecting cases). Indeed, both the Supreme Court and Third Circuit routinely hold statutes facially unconstitutional based on insufficient tailoring, without inquiring into all possible applications. *See, e.g.*, *Reed v. Town of Gilbert*, 576 U.S. 155, 171–72 (2015); *Brown*, 564 U.S. 786; *Ashcroft v. ACLU*, 542 U.S. 656, 666–70 (2004); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 123 (1991); *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 130–31 (1989); *United States. v. Steven*s, 533 F.3d 218, 231 n.13, 233–34 (3d Cir. 2008), *aff'd*, 559 U.S. 460 (2010); *see also Packingham v. North Carolina*, 582 U.S. 98, 105–06 (2017) (intermediate scrutiny); *Sorrell*, 564 U.S. at 580 (similar). Each time, the court simply asked whether the speech restriction satisfied the relevant level of scrutiny. Because the answer was "no," the court facially invalidated the challenged restriction without further analysis.

None of these cases relied on "overbreadth" to reach that result—making the opposition briefs' focus on that doctrine a red herring. *See* Pls. Br. 7–8; AG Br. 15. *See, e.g.*, *Stevens*, 533 F.3d at 235 n.16 (distinguishing overbreadth from narrow-tailoring claim); *Bruni*, 824 F.3d at 363–67, 373–74 (addressing facial narrow-

5

tailoring claim apart from "Overbreadth Claim"). The key point is that, under any test for facial invalidity, a broad content-based speech ban that fails strict scrutiny is facially invalid. *See, e.g.*, *Bruni*, 824 F.3d at 362.

The AG appears to suggest that the Supreme Court's decision in *NetChoice*, 144 S. Ct. at 2397, *sub silentio* overruled the Third Circuit's decision in *Bruni* (as well as scores of the Supreme Court's own cases) and created an "extraordinarily high bar" for facial challenges that applies even to broad content-based bans on speech. AG Br. 13–14. That is a sweeping over-reading of *NetChoice*'s narrow and case-specific holding.

*NetChoice* involved challenges to two statutes that regulated several "internet platforms" decisions about "whether and how to display user-generated content." *NetChoice*, 144 S. Ct at 2395–96. Throughout the lower-court litigation, both the litigants and the courts focused on the "heartland applications" of "Facebook's News Feed and YouTube's home page." *Id.* at 2397. They did not "address the full range of activities" of even Facebook or YouTube, let alone the activities of other platforms. *Id.* at 2397–98. But the laws arguably applied to a broad range of activities—for example, "direct messaging" services, "events management," the filtering of "incoming [email] messages," or the management of "financial exchanges" on a "payment service"—and each of those very different activities would require a separate analysis as to (1) whether the laws apply to them and

6

(2) whether "there is an intrusion on protected editorial discretion" or other protected First Amendment activity.  *Id.* at 2398; *see id.* at 2409 (Barrett, J., concurring) ("A function qualifies for First Amendment protection only if it is inherently expressive[,]" and "making this determination [for various internet functions] involves more than meets the eye.").  As the Court explained, "[c]urating a feed" might involve the creation of "an expressive product" (and thus implicate the First Amendment) while "transmitting direct messages" might not.  *Id.* at 2398.

Because the Court was dealing with a multifaceted law whose application might not always implicate First Amendment concerns, and the lower courts had failed to consider the full range of activities to which the laws might apply, the Court held that further record development was needed.  Because the challengers sought to invalidate the law in all of its applications—not just its application to news-feed content moderation—and because no lower court had analyzed how the law applies to the many different types of activity it arguably covers, the Court remanded for the lower courts to do that work.

Unlike the statutes in *NetChoice*, Daniel's Law is a straightforward content-based ban on specific speech.  It regulates *one* speech activity (disclosing a covered person's address or phone number), no matter the defendant.  And while the parties disagree on just how far Daniel's Law sweeps, *see, e.g.*, *infra* 27–28, even the AG concedes it bars speech, in the same way, in every application.  The only real dispute

7

is about the proper construction of Daniel's Law—a legal issue that requires no further record development to assess.

Nothing in *NetChoice* purports to overrule the many Supreme Court and Third Circuit cases that have relied on insufficient tailoring to facially invalidate a speech restriction like the one at issue here. *See supra* 5. The Supreme Court "does not normally overturn, or so dramatically limit, earlier authority sub silentio." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000). Unsurprisingly, courts since *NetChoice* have continued to find content-based speech restrictions facially unconstitutional. *See NetChoice, LLC v. Reyes*, --- F. Supp. 3d ---, 2024 WL 4135626, at *9–16 & n.92 (D. Utah Sept. 10, 2024) (addressing facial challenge to law requiring social media companies to verify users' ages and impose restrictions on minors' accounts). This Court can likewise decide, as in all the cases cited above, whether Daniel's Law is narrowly tailored on its face.

In any event, as the Whitepages, et al. supplementary brief explains further, Daniel's Law would still fail even if this Court were to assess "whether 'a substantial number of [the law's] applications are unconstitutional, judged against its plainly legitimate sweep,'" *NetChoice*, 144 S. Ct. at 2397 (citation omitted). The law applies to any "disclos[ure]" of a covered person's address or phone number (after notification), and neither Plaintiffs nor the AG point to *any* factual development that would clarify the Court's task. This Court can easily assess whether Daniel's Law's

8

speech ban is narrowly tailored to serve a compelling interest—and because the lack of narrow tailoring is "present in every case," it can easily answer that question "no." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021).

**B.    Daniel's Law Is a Content-Based Speech Restriction Subject to Strict Scrutiny**

The opposition briefs barely argue that Daniel's Law would satisfy strict scrutiny—implicitly acknowledging that it cannot survive that test.  *See* AG Br. 40 n.12; Pls. Br. 40–42.  Instead, Plaintiffs and the AG devote the bulk of their briefs to arguing that strict scrutiny does not apply.  None of their arguments is persuasive.

1.    Daniel's Law Regulates Speech

Plaintiffs—but not the AG—make the remarkable claim that Daniel's Law does not regulate speech *at all*.  Pls. Br. 8–10.  Established Supreme Court precedent refutes that argument.

The Supreme Court has held that "dissemination of information [is] speech within the meaning of the First Amendment."  *Sorrell*, 564 U.S. at 570; *see id.* ("Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs."); *see also Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("'If the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall into that category.'" (citation omitted)).  Thus, courts across the country have held that laws regulating the disclosure of similar information, including addresses and phone

numbers, restrict speech. *See, e.g.*, *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020); *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 949 (7th Cir. 2015) ("[P]rohibition on disclosing [personal information] is a direct regulation of speech."); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1012–13 (E.D. Cal. 2017) (law governing disclosure of "home address or telephone number of any elected or appointed official" regulated "speech"); *Brayshaw v. City of Tallahassee*, 709 F. Supp. 2d 1244, 1249 (N.D. Fla. 2010) ("[D]isclosing and publishing [home addresses and telephone numbers] obtained elsewhere is precisely the kind of speech that the First Amendment protects." (citation omitted)).  That resolves the matter here; indeed, the AG does not argue otherwise, essentially conceding that Daniel's law restricts speech.

Undaunted, Plaintiffs argue that "[a] speaker's activity only qualifies as 'speech' if an objectively reasonable listener would understand the speaker to have communicated a '*message* (ideological or otherwise).'"  Pls. Br. 8–9 (quoting *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 161 (3d Cir. 2002)). This is specious.  All Plaintiffs' cases address an entirely different question: what it takes for non-verbal *conduct* to be sufficiently expressive to attain First Amendment coverage.  *Tenafly Eruv Ass'n, Inc*, 309 F.3d at 158 (explaining circumstances in

which "[c]onduct is protected by the First Amendment" (citation omitted)).[1]  This case involves not mere conduct but rather the direct dissemination of information. And the case law is clear that "dissemination of information [is] speech within the meaning of the First Amendment."  *Sorrell*, 564 U.S. at 570; *see id.* (rejecting argument that "sales, transfer, and use of prescriber-identifying information are conduct, not speech").  Plaintiffs' cases do not suggest otherwise.[2]

Plaintiffs also claim that because "addressing information" (i.e., information about the sender or recipient of a message) is not a "communication" under the wiretapping laws, the disclosure of addresses or phone numbers does not constitute *speech* under the First Amendment.  Pls. Br. 9–10.  That is a non-sequitur.  Nothing

---

[1] *See Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 60 (2006) (law at issue "regulate[d] conduct, not speech"); *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (evaluating ban on sleeping in park overnight in connection with demonstration); *Spence v. Washington*, 418 U.S. 405, 408 (1974) (reversing conviction of college student for hanging American flag upside down with peace symbol taped over it); *United States v. O'Brien*, 391 U.S. 367 (1968) (reinstating conviction for burning selective service registration certificate); *Tenafly Eruv Ass'n, Inc*, 309 F.3d at 158 ("Affixing lechis to utility poles does not involve the use of words, so the plaintiffs' behavior is protected by the Free Speech Clause only if it constitutes expressive conduct."); *Troster v. Pa. State Dep't of Corr.*, 65 F.3d 1086, 1092 (3d Cir. 1995) (requiring officer to wear flag patch on uniform was not sufficiently expressive conduct to constitute compelled speech).

[2] For the same reason, Plaintiffs' supplemental case, *Green v. U.S. Dep't of Just.*, 111 F.4th 81, 96 (D.C. Cir. 2024), which held that a provision of the Digital Millennium Copyright Act ("DMCA") "expressly regulates conduct—the circumvention of technological locks, and trafficking in means of circumvention—rather than speech," is inapposite.  Daniel's Law does not regulate "circumvention" or "means of circumvention"; it regulates disclosure, i.e., speech.

limits speech protected by the First Amendment to "communications" in the wiretapping sense.  The distinction between the contents of a communication and mere addressing information matters in the wiretapping context because those laws protect only the former and not the latter.  *See, e.g.*, 18 U.S.C. § 2511(3)(a).  That distinction  has nothing to do with the scope of the First Amendment.[3]

### 2.    Daniel's Law Is Content-Based

Defendants' opening brief thoroughly explained why the "restraints on the way in which [certain] information might be . . . disseminated" in Daniel's Law are content-based restrictions subject to strict scrutiny.  Opening Br. 22–23 (quoting *Sorrell*, 564 U.S. at 568).  The opposition briefs raise two main responses:  *First*, they argue that the established principles discussed in the opening brief no longer apply because of the Supreme Court's decision in *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022), which Plaintiffs and the AG seem to read as radically expanding what it means for a law to be content-neutral.  Pls. Br. 11–13; AG Br. 25–27.  *Second*, the AG alone argues that a law is content-neutral even if it singles out some speech for more restrictive treatment, as long it does so because of the "secondary effects" of that speech.  AG Br. 27–30 (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992)).  Both arguments fail.

---

[3] As another court recently concluded, "consumer privacy class action caselaw" is "not relevant" to whether First Amendment protections attach to certain disclosures. *In re Reddit, Inc.*, 2024 WL 477519, at *4 n.2 (N.D. Cal. Feb. 7, 2024).

Plaintiffs concede that many cases have found restrictions on disclosure of addresses and phone numbers to be content-based, and fail to cite a single case coming out the other way.  *See* Pls. Br. 12; Opening Br. 23–24 (collecting cases).  Their only retort is that *City of Austin* effected a sea change in the definition of a content-based regulation, narrowing that category to restrictions on communications that "discuss" a "topic" or "express" a "substantive message."  Pls. Br. 11 (citing *City of Austin*, 596 U.S. at 71); *see* AG Br. 26 n.9.  Under *City of Austin*, they claim, Daniel's Law is content-neutral because it merely targets the "regurgitati[on] of addresses and phone numbers," not the "speaker's own message."  Pls. Br. 12.

Plaintiffs badly overread *City of Austin*.  That case considered a challenge to a regulation that turned on whether a sign was placed on or off a business's premises. 596 U.S. at 66.  The Supreme Court rejected the argument that the restriction was content-based merely because it "require[d] some evaluation of the speech" (i.e., reading a sign to determine whether it is on- or off-premises).  *Id.* at 72.  Because the law required an "examination of speech *only in service of drawing neutral, location-based lines*," the Court found it was "agnostic as to content."  *Id.* at 70 (emphasis added).  Where a distinction among speech is not "designed to inform the application of otherwise content-neutral restrictions," on the other hand, it remains content-based.  *Reyes*, 2024 WL 4135626, at *10; *see Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*, 101 F.4th 266, 269 (3d Cir. 2024) (law

13

assessing "size or location" of the sign to determine if regulation applies is content-neutral, but if the person "must consider [the] subject matter" of the sign, it is content-based (citation omitted)).  When *City of Austin* referred to "topic[s]" and "substantive message[s]," it did so to distinguish laws that turn on content itself from those that turn "on location" (but might require review of content to decide if the location trigger is met).  *Id.*

Under this proper framing, Daniel's Law is not "agnostic as to content."  *City of Austin*, 596 U.S. at 70-71 (emphasis added).  If certain information is disclosed (a covered person's address or phone number), the law applies; if any other information is disclosed, it does not.  That is the hallmark of a content-based restriction.  *See id.*

The AG tries to draw on *City of Austin* in a different way, arguing that Daniel's Law is "agnostic as to content" merely because Daniel's Law requires a request from a covered person to trigger its restrictions.  AG Br. 26.  That makes no sense.  By that logic, a law requiring libraries to remove all books discussing the Civil War from their shelves, but only if a patron complains, would be deemed "agnostic as to content"—a self-evidently absurd proposition.  Unsurprisingly, the case the AG relies on—*Dahlstrom*, 777 F.3d 937—does not support that position.  There, the Seventh Circuit upheld a statute prohibiting the disclosure of "'personal information' from a motor vehicle record."  *Id.* at 939.  The court held that this was a content-neutral restriction because it was focused on the "origin of the information" and was

14

"agnostic to the dissemination of the very same information" as long as it was "acquired from a lawful source." *Id.* at 939-40, 949. Here, by contrast, Daniel's Law bans specific content from any source. And nothing in *Dahlstrom* blesses blatantly content-based regulations, or insulates them from strict scrutiny, so long as they require an individual request to trigger legal consequences.

The AG also asserts that Daniel's Law is not content-based because it draws distinctions based on "secondary effects" of speech (i.e., the "danger" that could result from disclosure), rather than speech itself—and so is "*justified* without reference to the content of the speech." AG Br. 27–28 (citation omitted). But this argument fails as well. "[L]isteners' reactions to speech or the motive impact of speech on its audience is not a secondary effect." *Sheehan v. Gregoire*, 272 F. Supp. 2d 1135, 1146 (W.D. Wash. 2003) (citation omitted). A contrary rule would "completely swallow the First Amendment." *Id.*; *see also IMDb.com*, 962 F.3d at 1123 ("[A]s the Supreme Court has noted, 'it would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party.'" (quoting *Bartnicki*, 532 U.S. at 529–30)). Moreover, the case law refutes the AG's claim regarding "justif[ication]." "[A]n innocuous justification cannot transform a facially content-based law into one that is content neutral." *Reed*, 576 U.S. at 166. Daniel's Law, like many similar restrictions, remains patently content-based. *See* Opening Br. 23–24.

### 3.   Daniel's Law Does Not Regulate Commercial Speech

Plaintiffs and the AG both argue that Daniel's Law should be subject to intermediate scrutiny as a regulation of "commercial speech."  Pls. Br. 25–26; AG Br. 18–23.  This alternative attempt to avoid strict scrutiny also fails.

In contrast to the cases where the Supreme Court has found the commercial speech doctrine applicable, Daniel's Law prohibits far more than speech that is part of an advertisement or transaction.  *See, e.g.*, *Cent. Hudson Gas & Elec. Co. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 558–59 (1980) (ban on utility advertising); *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 478–79 (1995) (law prohibiting disclosure of alcohol content "on [beer] labels or in advertising"); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 534–35 (2001) (law regulating cigarette advertising and sale).  Indeed, the statute does not have any inherently commercial nexus.  It applies to *anyone* who discloses covered information after notice.[4]  It simply prohibits "disclos[ure]" or "redisclos[ure]" of covered persons' information.  N.J.S.A. 56:8-166.1(a)(1).  And while the definition of "disclosure" prohibits "sell[ing]" covered information, it also prohibits "giv[ing]," "lend[ing]," distribut[ing]," "provid[ing]," "present[ing]," "mail[ing]," and "mak[ing] available" covered information—none

---

[4] *Cf. Kratovil v. City of New Brunswick*, 2024 WL 1826867, at *3 (N.J. Super. Ct. App. Div. Apr. 26, 2024) (analyzing Daniel's Law's application to a particular reporter's speech).

16

of which requires any sort of commercial transaction or context.  N.J.S.A. 56:8-166.1(d).

Plaintiffs and the AG appear to argue, however, that because the law *might* regulate *some* commercial speech, the entire restriction must be analyzed as one regulating commercial speech exclusively.  That makes no sense.  Virtually any broad ban on speech can *also* affect commercial speech, but that does not mean the restriction must be analyzed under intermediate scrutiny.  Imagine, for example, a prohibition on "all televised advocacy."  Under Plaintiffs' and the AG's rationale, that far-reaching ban on speech at the heart of the First Amendment would escape strict scrutiny simply because it extends to commercial speech *in addition* to the vast amount of non-commercial speech it proscribes.  That cannot be correct.

In any event, Plaintiffs' and the AG's argument relies on an overly broad conception of commercial speech.  The Supreme Court has consistently defined "commercial speech" as "speech that does no more than propose a commercial transaction."  *Harris v. Quinn*, 573 U.S. 616, 648 (2014).  The speech prohibited by Daniel's Law—the disclosure of addresses and phone numbers—does not "propose a commercial transaction."  Thus, it does not qualify as commercial speech.

The opposition briefs focus on other factors identified in *Greater Philadelphia Chamber of Commerce v. City of Philadelphia*, 949 F.3d 116, 137 (3d Cir. 2020), which merely "aid the inquiry into whether speech is commercial."  Those factors

17

are: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *Id.*  But analyzing those three factors yields the same result here:  The speech at issue is not commercial.

The first factor is not satisfied because the addresses and phone numbers being disclosed—the contents of the speech—are not "advertisements."  Plaintiffs cite nothing to support the idea that Defendants ever use them as such.  The second factor is not satisfied either because addresses and phone numbers do not "refer to any particular product or service."  It is no answer for Plaintiffs to claim  that the addresses and phone numbers "[*are*] the product or service."  *See* Pls. Br. 26. Whether speech "*refers* to a specific product or service" is a way of determining whether it is "propos[ing] a commercial transaction"; whether speech *is* a "product or service" has nothing to do with that question.  After all, The New York Times may be a "product or service" one must pay to access, but that does not transform an op-ed in the paper into commercial speech.  As to the third factor, the Supreme Court has held that an "economic motivation" is "clearly [] insufficient by itself to turn [speech] into commercial speech." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983).  That includes speech contained in commercial databases. *See IMDb.com*, 962 F.3d at 1122 (online database containing age information not "commercial speech"); *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 959 (9th

18

Cir. 2012) (same for telephone directory where "two of the three" factors were not met).

Plaintiffs and the AG also point to outlier cases that ignore the Supreme Court's (and Third Circuit's) test for commercial speech and erroneously look instead to irrelevant considerations. The AG's lead case, *Stark v. Patreon, Inc.*, 656 F. Supp. 3d 1018, 1033 (N.D. Cal. 2023), is illustrative. There, after recognizing that "[a]pplying the *Bolger* factors [] d[id] not produce a clear outcome," the *Stark* court applied a "holistic inquiry" consisting of a mishmash of First Amendment concerns unrelated to the commercial speech tests outlined by the Supreme Court and Third Circuit. *Id.* at 1033–34. For example, the court noted that the video usage information at issue had "no expressive or creative content," *id.*—but that inquiry, as explained above, concerns whether *conduct is speech*, not whether *speech is commercial*. *Supra* 9–10. The court also noted that the disclosures "contain[ed] nothing of public interest," *Stark*, 656 F. Supp. 3d at 1034. But this is another factor untethered to whether the speech was *commercial. Stark* and the other decisions Plaintiffs and the AG cite for their purportedly "'common-sense'" approach to commercial speech, AG Br. 20, impermissibly stray from the Supreme Court's holding in *Harris* and the Third Circuit's holding in *Greater Philadelphia Chamber of Commerce.* This Court should not follow Plaintiffs and the AG to shaky ground when the paths laid out by Supreme Court and Third Circuit precedent provide a

firm answer: Daniel's Law is not subject to intermediate scrutiny under the commercial speech doctrine.

### 4. There Is No Special Privacy Exception to Strict Scrutiny for Content-Based Speech Restrictions

Finally, Plaintiffs and the AG suggest that strict scrutiny should not apply because the "history and tradition" of laws regulating privacy somehow alters the constitutional analysis. AG Br. 30–34; *see* Pls. Br. 1, 13–22. But there is no First Amendment doctrine that exempts a content-based restriction from strict scrutiny just because it has some nexus with a privacy interest.

In Plaintiffs' and the AG's telling, the "history and tradition of safeguarding individual privacy in the home"—and the fact that this history has "coexisted" with the First Amendment for many years—means that Daniel's Law, a content-based speech restriction, should not be subject to strict scrutiny. AG Br. 30–34; *see* Pls. Br. 17–21. Plaintiffs rely heavily on *Vidal v. Elster* for these ideas, but that "narrow" ruling about the Lanham Act's name clause turned on "the "uniquely content-based nature of trademark regulation and the longstanding coexistence of trademark regulation with the First Amendment." 602 U.S. at 310. *Vidal* was cautious to make clear that it *did not* "set forth a comprehensive framework for judging" even other "content-based" *trademark* restrictions. *Id.* It certainly did not purport to work a sea change in First Amendment law—under which courts routinely subject privacy-

20

related laws to strict scrutiny.[5]  The opposing briefs are therefore wrong in arguing that *Vidal* "sets out the governing framework" in this non-trademark case.  AG Br. 30; *see* Pls. Br. 13.

Moreover, even if *Vidal* did create a new generally applicable history-and-tradition exception to strict scrutiny, Daniel's Law would find no refuge in it.  For one thing, there is no historical tradition of restricting the speech at issue here.  To the contrary, home addresses and phone numbers have historically been publicly available in telephone directories and have long been recognized as fully protected speech.  See Opening Br. 21, 23–26; *supra* 9–12.

The opposition briefs also overstate the extent to which Daniel's Law is a "privacy" statute.  "When considering the governmental interest in passing a law, courts look to a *legislature's* stated intent."  *Alario v. Knudsen*, 704 F. Supp. 3d 1061, 1077-78  (D. Mont. 2023) (emphasis added); *see United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 808 (2000) (looking to legislature's actions to determine

---

[5] *See, e.g.*, *Barr v. Am. Ass'n of Pol. Consultants*, 591 U.S. 610, 615 (2020) (applying strict scrutiny to content-based law that was designed to "protect[] telephone consumers from [the] nuisance and privacy invasion" caused by robocalls); *Schrader v. Dist. Att'y of York County*, 74 F.4th 120, 127 (3d Cir. 2023) (strict scrutiny applied where state had a privacy interest in "protecting its child-abuse information" (citations omitted)); *Doe v. Schorn*, 2024 WL 128210, at *20 (E.D. Pa. Jan. 10, 2024) (strict scrutiny applied where government's interest was the "privacy of students and teachers involved in a confidential administrative process."); *IMDb.com*, 962 F.3d at 1125 (applying strict scrutiny where privacy interest was asserted in restricted age information).

interest law served).  Here, Daniel's Law's was intended to protect not "privacy" but safety: its "purpose … is to enhance the safety and security of certain public officials."  N.J.S.A. 56:8-166.3.  Furthermore, it bears little relation to the privacy torts that the opposing briefs recite.  Pls. Br. 13–15, 17–21; AG Br. 31–34.  It is not like intrusion upon seclusion and public disclosure of private facts, which prohibit intruding into private spaces or publishing embarrassing details about someone's life, in circumstances that are "highly offensive."  *In re Nickleodeon Consumer Privacy Litig.*, 827 F.3d 262, 293 (3rd Cir. 2016); *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 145–46 (3d Cir. 2024).  It is even less like a "misappropriation-of-name-and-likeness tort" because that tort concerns the "right to control one's name," Pls. Br. 14, which Daniel's Law does not regulate.[6]

Plaintiffs' case law fares no better than their history.  Their cited cases, which they claim "reject" the application of strict scrutiny for privacy cases, Pl. Br. 15–17, do nothing of the sort.  Instead, they merely stand for the proposition that, where there are "clashes between the First Amendment and privacy rights," courts should

---

[6] Although of questionable relevance to a history-and-tradition analysis given their recent vintage, Daniel's Law is also not like the federal statutes on which the opposition briefs rely.  *See, e.g.*, TCPA, 47 U.S.C. § 227(c)(1) ("protect[ing] … privacy rights to avoid receiving" phone solicitations at home); HIPAA, Pub. L. 104–191, 110 Stat. 1936 (protecting health information); VPPA, 18 U.S.C. § 2710(a)(3), (b) (protecting video rental history); Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq. (protecting biometric information).  Like the torts mentioned above, these laws address private and/or sensitive information; Daniel's Law does not.

not make generalized rules that go beyond the relevant restriction—e.g., about the intersection of speech and privacy.  That is to say, courts should not resolve cases by "hold[ing] broadly that [some] publication may *never* be punished consistent with the First Amendment."  *Fla. Star v. B.J.F.*, 491 U.S. 524, 532 (1989) (emphasis added).  The Supreme Court's refusal to fashion categorical rules in some of those cases is a far cry from "reject[ing] the application of strict scrutiny as a facial matter" when analyzing a content-based regulation.  Pls. Br. 16.[7]  Daniel's Law is a content-based restriction to which strict scrutiny should apply.

### C.   Daniel's Law Fails Any Level of Scrutiny

Content-based speech restrictions are "presumptively unconstitutional," even when they "do[] not discriminate among viewpoints," *Reed*, 576 U.S. at 163, 169; *cf.* Pls. Br. 22–25 (discussing viewpoint discrimination).  To assess whether a content-based restriction overcomes that presumption, courts apply strict scrutiny, which requires the government to show that the speech restriction "(1) serve[s] a compelling governmental interest; (2) [is] narrowly tailored to achieve that interest;

---

[7] Speech need not be of public concern for a law restricting it to merit strict scrutiny. *Contra* AG Br. 34, Pl. Br. 21.  None of the opposition briefs' cases bear on whether strict scrutiny applies to content-based speech restrictions generally.  *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985) (defamation); *Snyder v. Phelps*, 562 U.S. 443, 451-58 (2011) (intentional infliction of emotional distress); *Schrader*, 74 F.4th at 126 (explaining distinct doctrines for strict scrutiny and truthful publication); *see also Trans Union v. FTC*, 267 F.3d 1138 (D.C. Cir. 2001) (relying on defamation case).

and (3) [is] the least restrictive means of advancing that interest." *ACLU v. Mukasey*, 534 F.3d 181, 190 (3d Cir. 2008) (citation omitted); *see Camp Hill*, 101 F.4th at 271 (laws subject to strict scrutiny must "curtail speech as little as possible").

Neither Plaintiffs nor the AG provide any real argument why Daniel's Law satisfies that daunting test, which should be enough for the Court to grant Defendants' motion if it concludes (as it should) that strict scrutiny applies. Daniel's Law is far from the least restrictive means of advancing the state's interest here. And even if Plaintiffs and the AG are right that strict scrutiny does not apply, the Court should still grant Defendants' motion because Daniel's Law cannot satisfy even intermediate scrutiny.

      1.    <u>Daniel's Law Fails Strict Scrutiny</u>

To begin, the opposition briefs all but concede that Daniel's Law cannot survive strict scrutiny. The AG relegates the issue to a conclusory footnote, vaguely referencing the "multiple ways in which the law is tailored" (and elsewhere speculating that the law "would satisfy any level of constitutional scrutiny"). AG Br. 35, 40 n.12. That is not enough to preserve the issue. *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."). Plaintiffs do slightly more, *see* Pls. Br. 40–42, but they also come up woefully short. They focus on the "compelling goal of protecting the lives of Covered Persons." *Id.*

at 41.  But "it is not enough to show that the Government's ends are compelling"; the law must *also* "be carefully tailored to achieve those ends," and Plaintiffs never address that issue.  *Sable Commc'ns of Cal.*, 492 U.S. at 126.  Plaintiffs vaguely gesture at the "true threats" doctrine, *see* Pls. Br. 41, but they cannot explain how the anodyne "disclosures" banned by Daniel's Law could so qualify, *see Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (defining "true threat[]" as a "'serious expression[]' conveying that a speaker means to 'commit an act of unlawful violence'" (citation omitted)).  Thus, Plaintiffs and the AG have failed to raise any meaningful argument that Daniel's Law satisfies strict scrutiny.

That is likely because the answer is plain: Daniel's Law does not come close to satisfying strict scrutiny.  There are clearly less restrictive ways to further the government's interest in protecting covered persons from harm.

It is not up to Defendants to rewrite the statute, but there are numerous ways—which Defendants already proposed, Opening Br. 40–42—in which the statute's reach could be narrowed without sacrificing the state's safety objective.  Notably, the definition of "disclose" could be narrowed.  For example, "disclosure" could be tied to specific safety concerns documented in the legislative record and exclude types of disclosures that lack any such nexus to a demonstrated safety concern such that it at least allows companies to "share unredacted information with any vendor" subject to a use restriction, just as state agencies are allowed to do under the statute

presently.  N.J.S.A. 47:1B-3(5).  If this is sufficiently protective in the context of state agencies, it should be sufficient for private companies.  Narrow tailoring requires that at a minimum.  *See Schrader*, 74 F.4th at 127 (rejecting law as insufficiently tailored where alternatives were available).

Beyond narrowing the definition of "disclose," the Legislature could also impose a mens rea requirement, enact a more tailored penalty provision, adopt a verification provision, or refine or eliminate the assignment provision so as to minimize the potential for abusive—and speech-suppressive—litigation such as this. *See* Opening Br. 33, 41.  Plaintiffs and the AG nowhere meet their "burden" of "show[ing]" any of these alternatives would be "less effective" than Daniel's Law in its current form. *Mukasey*, 534 F.3d at 198.  That makes the law unconstitutional.

2.    Daniel's Law Fails Intermediate Scrutiny In Any Event

Even if Daniel's Law were subject only to intermediate scrutiny, the Court should still grant Defendants' motion to dismiss.  Intermediate scrutiny requires that the law in question "not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Yim v. City of Seattle*, 63 F.4th 783, 796 (9th Cir. 2023) (citation omitted).  As Defendants' opening brief explained (at 43–45), Daniel's Law burdens far more speech than needed to advance the state's interests.  And it does so while leaving wrongdoers with ample *other* means of obtaining that very information—meaning that the statute fails to advance the

26

government's interests "to a material degree." *Pitt News v. Pappert*, 379 F.3d 96, 107 (3d Cir. 2004) (citation omitted). Such a haphazard restriction on speech cannot pass even intermediate scrutiny. *See id.*

> a. *Daniel's Law Captures Substantially More Speech Than Is Necessary*

Plaintiffs and the AG concede that Daniel's Law's blanket ban on certain speech would restrict entirely private communications, such as business-to-business transfers of covered persons' information. Pls. Br. 29; AG Br. 42. Yet there is no direct connection between business-to-business disclosures of information—for example, to create marketing lists or to provide services to a vendor—and physical threats to covered persons' safety.[8]

As a result, Plaintiffs and the AG instead hypothesize that *indirect* threats—like "the development of a market" for covered persons' information, Pls. Br. 29, or the possibility that business transferees could publish the information, AG Br. 42 n.14—are sufficient to justify the extent of the state's regulation.[9]  But that is not

---

[8] Plaintiffs claim that the Complaints set forth "numerous ways" in which bad actors have "obtained home address and phone data meant only for 'business' recipients," Pls.' Br. 36., but they cite only one conceivably relevant example—involving a criminal organization "hir[ing] a private investigator who searched online data broker websites to obtain the officer's home address," Compl. ¶ 15—which is ambiguous as to whether a business-to-business transfer was involved at all, and hardly justifies a blanket ban on *all* business-to-business transfers.

[9] The AG also posits that "the law could hardly achieve its goals as effectively" if it did not prohibit private transfers between businesses.  AG Br. 42.  But this is "little

how tailoring works even under intermediate scrutiny.  States cannot ban speech whenever it is *possible* that doing so will *indirectly* solve some problem.  *See Pitt News*, 379 F.3d at 107 ("It is not enough if a law 'provides only ineffective or remote support for the government's purposes, . . . or if there is 'little chance' that the law will advance the state's goal.").  Instead, the party defending a speech-restrictive law "must demonstrate that the challenged law 'alleviate[s]' the cited harms 'to a material degree.'"  *Id.* (citation omitted).  The opposition briefs do none of this.[10] The government may not use blunt instruments to regulate protected speech.

b.    *The Assignments and Penalty Worsen the Problem*

The provision of Daniel's Law permitting assignment of claims in exchange for a contingency fee exacerbates the problems with Daniel's Law by incentivizing abusive requests divorced from the statute's safety concerns.[11]  The AG attempts to justify these assignments by comparing them to qui tam suits, AG Br. 45, but the comparison is inapt.  The long history of allowing relators to sue on behalf of the

---

more than assertion and conjecture" that without the restriction, "the objectives of [the Law] would be seriously undermined."  *Schrader*, 74 F.4th at 127; *see also Pitt News*, 379 F.3d at 107.

[10] The amicus brief focuses on the state's interest in protecting covered persons, which likewise does not address whether the statute is narrowly tailored.

[11] The abusive requests filed in this case en masse, in a manner intentionally difficult to comply with, belies amici's argument that "complying with statutes like Daniel's Law is relatively straightforward."  Amicus Br. 15.  That depends entirely on the requests—and Daniel's Law as written incentivizes abusive requests.

28

government to allow for greater enforcement of fraud laws, typically in contexts where speech is not implicated at all, *see, e.g.*, *Yates v. Pinellas & Oncology, P.A.*, 21 F.4th 1288, 1309 (11th Cir. 2021), is not tantamount to allowing private persons to harness the power of the government to suppress protected speech. The government may have an interest in preventing as much fraud as possible, but it does not have an interest in preventing as much speech as possible.

The "liquidated damages" available for violation of Daniel's Law—which ostensibly apply to any violation even without a finding of intent—further chills more speech than is necessary. *See* Opening Br. 33–34. This penalty can and should be considered when addressing Daniel's Law's impacts on speech. *See Schrader*, 74 F.4th at 128; *Publius*, 237 F. Supp. 3d at 1017–18 (explaining that Supreme Court precedent has been more skeptical of speech restrictions that "imposed a 'negligence per se standard,'" "did not permit 'case-by-case findings' concerning liability," and instead "imposed [liability] automatically" (quoting *Fla. Star*, 491 U.S. at 539)). Here too, the state should not be permitted to impose a harsh, no-fault penalty on speech where less severe alternatives, such as a fault-based regime or a different disclosure restriction, could serve its stated purpose just as well.

*Free Speech Coalition, Inc. v. Attorney General, United States*, cited by the AG, is not to the contrary. In that case, Plaintiffs challenged a penalty provision standing alone, and the Court held that the mere existence of a criminal penalty,

29

when the rest of the law did not unconstitutionally restrict speech, could not serve as an independent basis for a First Amendment challenge.  974 F.3d 408, 425 (3d Cir. 2020).   Three years later, however, the Third Circuit in *Schrader* considered a penalty as part of a holistic least-restrictive-means analysis and held that scheme unconstitutional in part because of the penalty—exactly what Defendants are asking the Court to do here.  74 F.4th at 128.

c.    *Daniel Law's Underinclusivity Undermines the State's Purported Interest in Security*

In addition to capturing too much speech, Daniel's Law also captures too little—it allows some to freely disclose the very information that it punishes others for providing.   Both the Plaintiffs and the AG argue that underinclusivity is irrelevant, claiming that the statute need not totally cure the ill it seeks to address. *See* AG Br. 48-49; Pls. Br. 34.  But underinclusivity is a problem when it "reveal[s] that a law does not actually advance [the state's] interest" to a material degree. *Williams-Yulee v. Fla. Bar*,  575 U.S. 433, 449 (2015).

That is the case here, where Daniel's Law allows government agencies and others to publish without restraint information that private parties are punished for sharing.  That substantially undermines the statute's articulated purpose by leading to the exact problems Daniel's Law was enacted to avoid: making covered persons' information available to potential bad actors on the internet.   Courts routinely hold laws unconstitutional on similar grounds.  *See, e.g.*, *Reed*, 576 U.S. at 172 (2015)

30

(holding law was not narrowly tailored "'when it le[ft] appreciable damage to [a] supposedly vital interest unprohibited'" (citation omitted)); *Pitt News*, 379 F.3d at 107 (concluding that speech restriction failed intermediate scrutiny because it was "under-inclusive"); *Brayshaw*, 709 F. Supp. 2d at 1249–50 (invalidating law in part because "punishing [a person] for his dissemination of information which is already publicly available is relatively unlikely to advance the interests claimed by the state," making the law "underinclusive" (citing *Fla. Star*, 491 U.S. at 535)); *see also* Opening Br. 11.

Plaintiffs and the AG argue that the government-records exception does not undermine Daniel's Law because public records are harder to access. Pls. Br. 35; AG Br. 51. That is unavailing. Computerized government records on publicly available county websites are a far cry from "county archives" and "courthouse files." AG Br. 49; *see* Opening Br. 38; *see also Ostergren v. Cuccinelli*, 615 F.3d 263, 286 (4th Cir. 2010) (finding critical to the tailoring analysis that the government records were available online as opposed to in courthouses). Indeed, information for four of the six named plaintiffs in this case is publicly available on government websites through the most rudimentary of searches. *See* Opening Br. 12; *see also* Exs. 2–4 to Decl. in Supp. of Mot. to Dismiss. That Daniel's Law fails to address the safety concerns posed by government-website disclosures (e.g., by requiring

covered persons to go through the public-redaction process or by further restricting dissemination) all but negates its advancement of the state's purported interest.

The AG's argument that "the State can more easily oversee its own operations," AG Br. 42, misses the point.  Defendants' argument is that the law permits the state to share information with *vendors* and other non-state entities—and the AG never explains how state oversight of "its own operations" minimizes the risk of disclosure to third-party private "vendors."  The state may not prohibit speech by some in the name of safety when it allows that very same speech by others.

### d.    *The Notice Provision Does Not Save the Law*

Plaintiffs and the AG also rely heavily on the law's notice requirement in an attempt to dodge the statute's breadth.   The AG in particular points to cases upholding laws that allow listeners to choose not to hear certain speech in some contexts, which leaves the speaker free to speak to other individuals or in different contexts.  AG Br. 37–39; *see Hill v. Colorado*, 530 U.S. 703, 716–17 (2000) (law prohibiting "approach[ing]" someone without their consent to deliver handbill or message within certain distance of a healthcare facility); *Mainstream Mktg. Servs., Inc. v. FTC*, 358 F.3d 1228, 1241–43 (10th Cir. 2004) (do-not-call registry).  But that is not what Daniel's Law does—instead, it allows certain persons to "opt in" to restrict select *others'* speech in *every* context.  That poses a much greater risk of chilling speech. *Cf. Bolger*, 463 U.S. at 72 (Court has approved allowing individuals

32

to give notice that they do not wish to receive mail, but has "never held that the government itself can shut off the flow of mailings").

In any event, the fact that a law contains a notice provision "does not eliminate the final inquiry" regarding tailoring. *Larson v. City & Cnty of San Francisco*, 192 Cal. App. 4th 1263, 1296 (2011) (finding law insufficiently tailored even where a tenant could "opt out" of receiving certain communications); *see Pearson v. Edgar*, 153 F.3d 397 (7th Cir. 1998) (rejecting statute with notice provision as insufficiently tailored to state's interests). The tailoring problems with Daniel's Law stem from the breadth and severity of its restrictions, while the same information remains available elsewhere. *See supra* 24–32. Nothing about the notice provision addresses these issues.

### 3.   Daniel's Law Is Not Subject to a Narrowing Construction

Instead of defending Daniel's Law as written, the opposition briefs proffer narrowing constructions that purport to limit the statute to speech related to its goals. But even their watered-down version of Daniel's Law would fail constitutional scrutiny given its broad ban on *all* "transfers between businesses." Pls. Br. 30. As shown above, *see supra* 26, the connection between business-to-business disclosure (e.g., to provide services to a vendor) and physical threats to covered persons' safety is threadbare. Absent something more than "speculation or conjecture" to support the notion that Daniel's Law "will advance the state's goal," not even this narrowed

33

version of the statute could pass constitutional muster.  *See Pitt News*, 379 F.3d

at 107 (citation omitted).

Regardless, the proposed limiting constructions fail because none is supported

by the actual text at issue.

*First*, Plaintiffs posit that the law covers two categories: "public disclosures"

and "transfers between businesses."  Pls. Br. 29–30.  But they never tie that assertion

to the actual statute—and the terms "give," "distribute," "circulate," "provide,"

"deliver," "present," and "mail" (among others) sweep far beyond Plaintiffs' two

manufactured categories.  N.J.S.A. 56:8-166.1(d).

*Second*, both Plaintiffs and the AG deny that Daniel's Law covers intra-firm

disclosure to employees.  *See* AG Br. 41 (disclosure to "one's workers" does not

qualify under the law); Pls. Br. 29 (similar).  But that limitation is unmoored from

the text, too, because the statute prohibits "distribut[ing]," "provid[ing]," or

"otherwise mak[ing] available the home address or unpublished home telephone

number."  Nothing in this language is limited to a disclosure to a certain audience,

as the AG and Plaintiffs contend.  If anything, the statute says the opposite.  *See*

N.J.S.A. 56:8-166.1(d) (to "disclose" includes "making available or viewable within

a searchable list or database, regardless of whether a search … is actually

performed").

34

*Third*, the opposition briefs assert that the law applies only or "most[ly]" to "data brokers," although neither brief ever defines this term. *See* Pls. Br. 4, 9 (referring to "data brokers" and "the data broker industry"); AG Br. 21 ("data brokers" constitutes "much if not most of the law's coverage"). There is no such limitation in the text of Daniel's Law. Indeed, the instant lawsuits refute this idea; as Defendants already explained, many defendants here are not "data brokers." Opening Br. 18–20. In any event, neither brief explains why limiting the law to "data brokers" would render it narrowly tailored to the state's interest in safety.[12]

*Fourth*, the AG relies on the dictionary definition of "disclose"—meaning "to make known or reveal to another" or "to expose"—to argue that the law "does not prevent [an] entity from continuing to possess the address for their own purposes." AG Br. 39. But dictionary definitions are irrelevant because the statute provides its own sweeping definition of "disclose"—which this court "must follow" "even if it varies from that term's ordinary meaning." *Pellegrino v. U.S. Transp. Sec. Admin.*, 937 F.3d 164, 178 (3d Cir. 2019) (citation omitted). And the statutory definition does nothing to exclude a business's use of a covered person's address "for its own purposes" if the use involves activity that falls within the definition's terms. Further,

---

[12] If Daniel's Law really prohibits only "data brokers" from sharing information, then it stops only one type of speaker from speaking; in other words, it would sanction speaker-based discrimination, which the Supreme Court has held raises particularly acute concerns. *Sorrell*, 564 U.S. at 552 (holding law unconstitutional on this basis).

the AG fails to explain why the definitions cited would prohibit disclosures between businesses, but not between people or entities within the same company.[13]

Finally, Plaintiffs appeal to the *ejusdem generis* rule, Pls. Br. 31, but that does not limit the amount of "disclosure" the law covers. That rule provides that a catch-all term at the end of a statutory provision—here, "otherwise make available"—is limited by the other terms in the provision. But the nineteen words in the definition that appear before the catch-all phrase are so broad that they offer no limiting principle to cabin this "residual category." Pls. Br. 31. And the term "or" in "or otherwise make available" implies that the phrase was intended to cover *even more* conduct—not act as limitation. *See Loughrin v. United States*, 573 U.S. 351, 357 (2014) (holding otherwise would "disregard what 'or' customarily means.").

### D.    Daniel's Law Is Unconstitutionally Vague

To begin, Plaintiffs' claim that the Court limited Defendants' motion to dismiss to "facial First Amendment challenges" lacks merit. Pls. Br. 38. The Court's Order was not so limited, ordering the Defendants to file motions to dismiss "on the ground that Daniel's Law . . . is unconstitutional on its face," No. 1:24-cv-

---

[13] The Legislature's definition of "disclose" also renders inapposite the AG's cited case, *Allen v. Vertafore, Inc.*, 28 F.4th 613, 617 (5th Cir. 2022) which involved a different statutory scheme. In that particular statutory context the court held that the term "disclose" did not include maintaining a database. But here, the definition of "disclose" in Daniel's Law specifically identifies "making available or viewable within a searchable list or database" as "disclos[ure]." N.J.S.A. 56:8-166.1(d).

3993, Dkt. No. 36, and "vagueness is an alternative ground for facial invalidation." *United States v. Williams*, 553 U.S. 285, 304 (2008). In any event, vagueness "raises special First Amendment concerns." *Reno v. ACLU*, 521 U. S. 844, 871–72 (1997).

### 1.   Defendants Have Standing to Bring a Vagueness Challenge

Plaintiffs and the AG argue that Defendants lack "standing" to assert a facial vagueness challenge because Defendants are alleged to have engaged in some conduct to which the law clearly does apply. See AG Br. 52; *accord* Pls. Br. 39.[14] But that is not the rule for facial First Amendment challenges, which are appropriate where "vagueness permeates the text" of a law. *City of Chicago v. Morales*, 527 U.S. 41, 55 (1993) (plurality). The opposition's cases—*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982), and *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010)—did not involve facial vagueness challenges to restrictions of protected speech, and are therefore distinguishable.

### 2.   Daniel's Law's Vague Language and Enforcement Mechanism Risk Chilling Speech

The opposition briefs misstate the applicable standard of review. Plaintiffs contend that Defendants must prove 'the enactment is impermissibly vague in all of its applications,'" Pls. Br. 39 (citation omitted), but that is only true where "the

---

[14] While Plaintiffs refer to a purported concession that *allegations* would be covered, Pls. Br. 29, for the sake of clarity, no Defendant "concede[s]" that they engaged in any covered conduct.

enactment implicates no constitutionally protected conduct," *Hoffman*, 455 U.S. at 494–95, which is certainly not the case here. *Supra* 9–10. The AG similarly argues that vagueness standards are loosened for civil statutes that regulate economic activities, AG Br. 53 (citation omitted), but ignores that Daniel's Law does not solely regulate economic activities. *See supra* 16.

Under the proper standard, a statute is impermissibly vague if it fails to provide sufficient notice of the conduct it prohibits, such that "regulated parties [do not] know what is required of them," or is otherwise susceptible to arbitrary enforcement. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012). As the opening brief showed (at 45–49), Daniel's Law fails this test.

The opposition briefs come nowhere close to refuting this showing. Plaintiffs vaguely gesture to rules of "statutory construction" to manufacture some limits on the boundless statutory text. Pls. Br. 39–40. But their *ipse dixit* assertions cannot create limitations absent from the statute itself. *See supra* 33–36. The AG claims that the law has *some* clear applications, and that uncertainty over other applications cannot form the basis of a vagueness challenge. Not so where, as here, the statute chills speech. *See, e.g.*, *Mukasey*, 534 F.3d at 205 (finding statute intended to target "commercial pornographers" impermissibly vague where the statute's overbroad definitions created uncertainty for all publishers, thereby "chilling their speech").

38

The law's use of the vague term "unpublished home phone numbers" continues to compound its problems. The AG asserts that the meaning of "unpublished phone number" is "well understood" as a number "not currently listed in a local telephone directory," which "still exist." AG Br. 54; *see* Pls. Br. 39 & n.5. But the AG does not state which directories "still exist" (if any) in New Jersey, AG Br. 54, and nowhere explains how Defendants are to ascertain which directories matter, or why a directory (as opposed to another form of "publication") is the benchmark. And the fact that it must reach cross-country—to a California statute defining "unpublished" numbers as those that a subscriber has requested be kept "in confidence"—speaks volumes. That law has nothing to do with the meaning of Daniel's Law and also does not even tie compliance to local directories, as the AG suggests Daniel's Law does. *See* Cal. Pub. Util Code § 2891.1(h).

The opposition briefs further argue there is no risk of "arbitrary enforcement" because Daniel's Law is privately enforced. Pls. Br. 39–40; *see* AG Br. 54–55. But Supreme Court precedent holds that a potential for "arbitrary enforcement" exists whenever issues of statutory application would be sent to "judges" "for resolution on an *ad hoc* and subjective basis"—a concern that is directly relevant here given the attempted private enforcement of the law by Plaintiffs in dozens of lawsuits before this Court. *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (emphasis added). And the AG's argument that "all tort law (indeed, all private law) would be

39

unconstitutional[ly] vague, since individuals always have freedom to choose whether to sue," is nonsensical. AG Br. 55. Plaintiffs sued dozens of Defendants for massive monetary damages based on varying views of the vague undefined terms of the statute—in ways that will prevent the disclosures at issue on pain of massive, liquidated penalties. The clear and specific impact on speech is obvious. *See, e.g.*, *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 576 (1987) (broad restriction on speech in airport terminal violated First Amendment because "[t]he opportunity for abuse, especially where a statute has received a virtually open-ended interpretation, is self-evident" (citation omitted)).

### E. The Tenth Amendment Does Not Save Daniel's Law

Finally, Plaintiffs argue that Daniel's Law is an exercise of the police power protected by the Tenth Amendment. Pls. Br. 40. But the "right of the States" to exercise their "police power" is limited to "regulations that do not . . . violate rights secured by the Constitution of the United States." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 521-22 (2019). As discussed, Daniel's Law violates the First Amendment and so lacks Tenth Amendment protection.

## III. CONCLUSION

The Court should dismiss Plaintiffs' claims with prejudice.

Dated: September 13, 2024

**LATHAM & WATKINS LLP**

/s/ *Kevin M. McDonough*
Kevin M. McDonough (ID: 41892005)
Serrin Turner (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com
serrin.turner@lw.com

Bradley M. Baglien (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email: bradley.baglien@lw.com

*Attorneys for Defendants LightBox Parent, L.P. and LightBox Holdings, L.P.*

Dated: September 13, 2024

**CARLTON FIELDS**

/s/ *Michael T. Hensley*

Michael T. Hensley
Jorkeell Echeverria
180 Park Avenue, Suite 106
Florham Park, New Jersey 07932
Tel: 973.828.2613
Fax: 212.430.5501
MHensley@carltonfields.com
JEcheverria@carltonfields.com

**PARKER POE ADAMS & BERNSTEIN LLP**

Sarah F. Hutchins (*pro hac vice*)
Corri A. Hopkins (*pro hac vice*)
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Tel: 704.335.6639
sarahhutchins@parkerpoe.com
corrihopkins@parkerpoe.com

*Attorneys for Defendant Blackbaud, Inc.*

Dated: September 13, 2024

**VEDDER PRICE P.C.**

/s/ *Blaine C. Kimrey*

Blaine C. Kimrey (*pro hac vice*)
bkimrey@vedderprice.com
Bryan K. Clark (*pro hac vice*)
bclark@vedderprice.com
222 N. LaSalle Street
Chicago, IL 60601
T: +1 312 609 7500
F: +1 312 407 5005

Jean A. Occhiogrosso
jocchiogrosso@vedderprice.com

42

Vedder Price P.C.
1633 Broadway, 31st Floor
New York, New York 10019
T: +1 212 407 7700
F: +1 212 407 7799

*Attorneys for Defendant Whitepages, Inc.*

Dated: September 13, 2024              **VEDDER PRICE P.C.**

                                       /s/ *Blaine C . Kimrey*
                                       Blaine C. Kimrey (*pro hac vice*)
                                       bkimrey@vedderprice.com
                                       Bryan K. Clark (*pro hac vice*)
                                       bclark@vedderprice.com
                                       222 N. LaSalle Street
                                       Chicago, IL 60601
                                       T: +1 312 609 7500
                                       F: +1 312 407 5005

                                       Jean A. Occhiogrosso
                                       jocchiogrosso@vedderprice.com
                                       Vedder Price P.C.
                                       1633 Broadway, 31st Floor
                                       New York, New York 10019
                                       T: +1 212 407 7700
                                       F: +1 212 407 7799

                                       *Attorneys for Defendant Hiya, Inc.*

Dated: September 13, 2024              **SEYFARTH SHAW LLP**

                                       /s/ *Robert T. Szyba*
                                       Robert T. Szyba
                                       SEYFARTH SHAW LLP
                                       620 Eighth Avenue, 32nd Floor
                                       New York, NY 10018-1405
                                       Telephone: (212) 218-5500
                                       Email: rszyba@seyfarth.com

*Attorneys for Defendant We Inform, LLC*

Dated: September 13, 2024      **SEYFARTH SHAW LLP**

/s/ *Robert T. Szyba*
Robert T. Szyba
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, NY 10018-1405
Telephone: (212) 218-5500
Email: rszyba@seyfarth.com

*Attorneys for Defendant Infomatics, LLC*

Dated: September 13, 2024      **SEYFARTH SHAW LLP**

/s/ *Robert T. Szyba*
Robert T. Szyba
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, NY 10018-1405
Telephone: (212) 218-5500
Email: rszyba@seyfarth.com

*Attorneys for Defendant The People Searchers, LLC*

Dated: September 13, 2024      **DENTONS US LLP**

/s/ *Stephen M. Turner*
Stephen M. Turner, Esq.
DENTONS US LLP
101 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Telephone: (973) 912-7146
Email: stephen.turner@dentons.com

44

Bety Javidzad, Esq. (*pro hac vice*)
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone: (213) 243-6115
Email: bety.javidzad@dentons.com

*Attorneys for Defendant Commercial
Real Estate Exchange, Inc.*

Dated: September 13, 2024       **TROUTMAN PEPPTER
HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
     melissa.chuderwicz@troutman.
     com

*Attorneys for Defendant DM
Group.Inc.*

Dated: September 13, 2024       **TROUTMAN PEPPTER
HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227

45

Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
　　　melissa.chuderwicz@troutman.
　　　com

*Attorneys for Defendant Carco Group
Inc.*

Dated: September 13, 2024            **TROUTMAN PEPPTER
                                     HAMILTON SANDER LLP**

                                     */s/ Angelo A. Stio III*
                                     Angelo A. Stio III
                                     Melissa A. Chuderewicz
                                     TROUTMAN PEPPER HAMILTON
                                     SANDERS LLP
                                     Suite 400
                                     301 Carnegie Center
                                     Princeton, NJ 08540-6227
                                     Telephone: (609) 951-4125
                                     Email: angelo.stio@troutman.com
                                     　　　melissa.chuderwicz@troutman.
                                     　　　com

                                     *Attorneys for Defendant Deluxe Corp.*

Dated: September 13, 2024            **ORRICK, HERRINGTON &
                                     SUTCLIFFE LLP**

                                     */s/ Camille Joanne Rosca*
                                     Camille Joanne Rosca
                                     ORRICK, HERRINGTON &
                                     SUTCLIFFE LLP
                                     51 West 52nd Street
                                     New York, NY  10019-6142
                                     Telephone: +1 212 506 5000
                                     Email: crosca@orrick.com

46

*Attorneys for Defendant*
*TWILIO INC.*

Dated: September 13, 2024                    **SPIRO HARRISON & NELSON**

                                            */s/ Thomas M. Kenny*
                                            Thomas M. Kenny, Esq.
                                            Francesca Simone, Esq.
                                            363 Bloomfield Avenue, Suite 2C
                                            Montclair, NJ 07042

                                            *Attorneys for Defendants Quantarium*
                                            *Alliance, LLC and Quantarium*
                                            *Group, LLC*

Dated: September 13, 2024                    **QUINN EMANUEL URQUHART**
                                            **& SULLIVAN, LLP**

                                            */s/ Anthony J. Staltari*
                                            Anthony J. Staltari (ID No.
                                            233022017)
                                            51 Madison Avenue, 22nd Floor
                                            New York, New York 10010
                                            Tel.: (212) 849-7000
                                            Email:
                                            anthonystaltari@quinnemanuel.com

                                            Viola Trebicka (*pro hac vice*)
                                            John Wall Baumann (*pro hac vice*)
                                            865 S. Figueroa Street, 10th Floor
                                            Los Angeles, CA 90017
                                            Telephone: (213) 443-3000
                                            violatrebicka@quinnemanuel.com
                                            jackbaumann@quinnemanuel.com

                                            Ella Hallwass (*pro hac vice*)
                                            555 Twin Dolphin Drive, 5th Floor
                                            Redwood Shores, CA 94065
                                            Telephone: (650) 801-5000
                                            ellahallwass@quinnemanuel.com

Xi ("Tracy") Gao (*pro hac vice* )
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
tracygao@quinnemanuel.com

*Attorneys for Defendant Yardi*
*Systems, Inc.*

Dated: September 13, 2024                **CLARK HILL PLC**

                                         */s/ Myriah V. Jaworski*
                                         Myriah V. Jaworski (*pro hac vice*)
                                         Chirag H. Patel (*pro hac vice*)
                                         Steven Richman, Esq.
                                         210 Carnegie Center, Suite 102
                                         Princeton, NJ 08540
                                         (609) 785-2911
                                         Email: mjaworski@clarkhill.com
                                                cpatel@clarkhill.com
                                                srichman@clarkhill.com

                                         *Attorneys for Defendant*
                                         *6sense Insights, Inc.*

Dated: September 13, 2024                **CLARK HILL PLC**

                                         */s/ Myriah V. Jaworski*
                                         Myriah V. Jaworski (*pro hac vice*)
                                         Chirag H. Patel (*pro hac vice*)
                                         Steven Richman, Esq.
                                         210 Carnegie Center, Suite 102
                                         Princeton, NJ 08540
                                         (609) 785-2911
                                         Email: mjaworski@clarkhill.com
                                                cpatel@clarkhill.com
                                                srichman@clarkhill.com

                                         *Attorneys for Defendant*

48

*Search Quarry LLC*

Dated: September 13, 2024

**TROUTMAN PEPPTER HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*

Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
melissa.chuderwicz@troutman.com

*Attorneys for Defendant Acxiom LLC*

Dated: September 13, 2024

**TROUTMAN PEPPTER HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*

Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
melissa.chuderwicz@troutman.com

*Attorneys for Defendants Enformion, LLC and Enformion Holdco, Inc.*

49

Dated: September 13, 2024

**LATHAM & WATKINS LLP**

/s/ *Kevin M. McDonough*
Kevin M. McDonough (ID: 41892005)
Serrin Turner (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com
serrin.turner@lw.com

Bradley M. Baglien (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email: bradley.baglien@lw.com

*Attorneys for Defendants CoStar Group, Inc. and CoStar Realty Information, Inc.*

Dated: September 13, 2024

**LATHAM & WATKINS LLP**

/s/ *Kevin M. McDonough*
Kevin M. McDonough (ID: 41892005)
Serrin Turner (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com
serrin.turner@lw.com

Jennifer C. Archie (*pro hac vice*)
Bradley M. Baglien (*pro hac vice*)

50

LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email: jennifer.archie@lw.com
bradley.baglien@lw.com

Robert C. Collins (*pro hac vice*)
LATHAM & WATKINS LLP
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: robert.collins@lw.com

*Attorneys for Defendants Oracle*
*International Corporation, Oracle*
*America, Incorporated, and Oracle*
*Corporation*

Dated: September 13, 2024          **TROUTMAN PEPPTER**
                                   **HAMILTON SANDER LLP**

                                   */s/ Angelo A. Stio III*
                                   Angelo A. Stio III
                                   Melissa A. Chuderewicz
                                   TROUTMAN PEPPER HAMILTON
                                   SANDERS LLP
                                   Suite 400
                                   301 Carnegie Center
                                   Princeton, NJ 08540-6227
                                   Telephone: (609) 951-4125
                                   Email: angelo.stio@troutman.com
                                   melissa.chuderwicz@troutman.com

                                   *Attorneys for Defendant Red Violet,*
                                   *Inc.*

51

Dated: September 13, 2024                    **KELLEY DRYE & WARREN LLP**

                                             */s/ Lauri A. Mazzuchetti*
                                             Lauri A. Mazzuchetti
                                             Whitney M. Smith
                                             Aaron J. Gold
                                             KELLEY DRYE & WARREN LLP
                                             One Jefferson Road, 2nd Floor
                                             Parsippany, NJ 07054
                                             Tel: (973) 503-5900
                                             Fax: (973) 503-5950
                                             lmazzuchetti@kelleydrye.com
                                             wsmith@kelleydrye.com
                                             agold@kelleydrye.com

                                             *Counsel for Defendant*
                                             *RE/MAX, LLC*


Dated: September 13, 2024                    **FAEGRE DRINKER BIDDLE &**
                                             **REATH LLP**

                                             */s/ Ross A. Lewin*
                                             Ross A. Lewin
                                             Faegre Drinker Biddle & Reath LLP
                                             105 College Road East
                                             Princeton, New Jersey 08542

                                             Kevin DeMaio
                                             600 Campus Drive
                                             Florham Park, New Jersey 07932
                                             ross.lewin@faegredrinker.com
                                             kevin.demaio@faegredrinker.com

**HARRISON LAW LLC**
Rachel B. Niewoehner *(pro hac vice)*
Katherine A.G. Sobiech *(pro hac vice)*
141 West Jackson Boulevard, Suite 2055
Chicago, Illinois 60604
(312) 638-8776

*Attorneys for Defendants*
*Epsilon Data Management, LLC,*
*Conversant LLC, and*
*Citrus Ad International, Inc.*

Dated: September 13, 2024

**STARR, GERN, DAVISON & RUBIN, P.C.**

*/s/ Richard T. Welch*
Richard T. Welch, Esq. (032982006)
Ronald L. Davison, Esq. (266481971)
Starr, Gern, Davison & Rubin, P.C.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
Tel: 973.403.9200
rwelch@starrgern.com
rdavison@starrgern.com

**ZWILLGEN PLLC**

Jacob Sommer, Esq.
1900 M. Street NW, Suite 250
Washington, DC 20036
Tel: 202.706.5205
jake@zwillgen.com
(Admitted Pro Hac Vice)

Sudhir Rao, Esq.
183 Madison Avenue, Suite 1504
New York, NY 10016

Tel: 646.362.5590
Sudhir.Rao@zwillgen.com
(Admitted Pro Hac Vice)

*Attorneys for Defendant People Data
Labs, Inc.*

Dated: September 13, 2024          **STOEL RIVES LLP**

*/s/ Misha Isaak*
Misha Isaak
misha.isaak@stoel.com
James A. Kilcup
james.kilcup@stoel.com
Alexandra Choi Giza
alexandra.giza@stoel.com
STOEL RIVES LLP
760 SW Ninth Ave, Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380

Ryan J. Cooper
ryan@cooperllc.com
COOPER, LLC
108 N. Union Ave., Suite 4
Cranford, NJ 07016
Telephone: (908) 514-8830

*Counsel for Defendant Labels &
Lists, Inc.*

Dated: September 13, 2024          **GORDON, REES, SCULLY &
MANSUKHANI LLP**

*/s/ Douglas Motzenbecker*
Douglas Motzenbecker, Esq.
Joseph Salvo, Esq. (*pro hac vice
forthcoming*)
John Mills, Esq. (*pro hac vice
forthcoming*)

54

Bianca Evans, Esq. (pro hac vice)
1 Battery Park Plaza
Suite 2801
New York, NY 10004
Telephone: (212) 453-0725
Facsimile: (212) 269-5505
dmotzenbecker@grsm.com
jsalvo@grsm.com
jtmills@grsm.com
bevans@grsm.com

*Attorneys for Defendant Claritas LLC*

Dated: September 13, 2024                    **PIERSON FERDINAND LLP**

                                             */s/ Jill A. Guldin*
                                             Jill A. Guldin, Esq. (No. 93657)
                                             One Liberty Place
                                             1650 Market Street, 36th Floor
                                             Philadelphia, PA 19103
                                             Telephone: (856) 896-4096
                                             Facsimile: (856) 494-1566
                                             Email: jill.guldin@pierferd.com

                                             **FISHERBROYLES, LLP**

                                             Jason A. Spak (*admitted pro hac vice*)
                                             6360 Broad Street #5262
                                             Pittsburgh, PA 15206
                                             T:  412-230-8555
                                             F:  412-774-2382
                                             E:  jason.spak@fisherbroyles.com

                                             *Counsel for Defendant Innovis Data
                                             Solutions, Inc.*

55

Dated: September 13, 2024

**CONSTANGY BROOKS, SMITH & PROHPHET LLP**

*/s/ John E. MacDonald*
John E. MacDonald (011511995)
Princeton South Corporate Center
3120 Princeton Pike, Suite 301
Lawrenceville, NJ 08648
Phone: (609) 357-1183
Fax: (609) 844-1102
jmacdonald@constangy.com

*Attorneys for Defendant*
*Accurate Append, Inc.*

Dated: September 13, 2024

**TRESSLER LLP**

*/s/ Timothy M. Jabbour*
Timothy M. Jabbour (ID:TJ5611)
George Z. Twill (ID: 275292018)
Tressler LLP
163 Madison Avenue, Suite 404
Morristown, NJ 07960
973-848-2901
tjabbour@tresslerllp.com
gtwill@tresslerllp.com

Gregory C. Scaglione (pro hac vice)
Timothy Hutchinson (pro hac vice)
Koley Jessen P.C., L.L.O.
1125 S. 103rd St., Suite 800
        Omaha, NE 68124
531-444-0644
Greg.Scaglione@koleyjessen.com
Tim.Hutchinson@koleyjessen.com

*Attorneys for Defendant Data Axle,*
*Inc.*

Dated: September 13, 2024

**TROUTMAN PEPPTER**
**HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
melissa.chuderwicz@troutman.com

*Attorneys for Defendant Remine Inc.*

Dated: September 13, 2024

**GORDON, REES, SCULLY &**
**MANSUKHANI LLP**

*/s/ Douglas Motzenbecker*
Douglas Motzenbecker, Esq.
Joseph Salvo, Esq. (*pro hac vice*
*forthcoming*)
John Mills, Esq. (*pro hac vice*
*forthcoming*)
Bianca Evans, Esq. (pro hac vice)
1 Battery Park Plaza
Suite 2801
New York, NY 10004
Telephone: (212) 453-0725
Facsimile: (212) 269-5505
dmotzenbecker@grsm.com
jsalvo@grsm.com
jtmills@grsm.com
bevans@grsm.com

*Attorneys for Defendant Lusha*
*Systems Inc.*

57

Dated: September 13, 2024                    **CARLTON FIELDS, P.A.**

                                             */s/ Michael D. Margulies*
                                             Michael D. Margulies (No.
                                             030412008)
                                             CARLTON FIELDS, P.A.
                                             180 Park Avenue, Suite 106
                                             Florham Park, NJ 07932
                                             Telephone: (973) 828-2600
                                             Email:
                                             mmargulies@carltonfields.com

                                             *Attorneys for Defendants Teltech
                                             Systems, Inc. and Epic Applications,
                                             LLC*

Dated: September 13, 2024                    **LATHAM & WATKINS LLP**

                                             */s/ Kevin M. McDonough*
                                             Kevin M. McDonough (ID:
                                             41892005)
                                             LATHAM & WATKINS LLP
                                             1271 Avenue of Americas
                                             New York, NY 10020
                                             Telephone: (212) 906-1200
                                             Email: kevin.mcdonough@lw.com

                                             Jennifer C. Archie (*pro hac vice*)
                                             Bradley M. Baglien (*pro hac vice*)
                                             LATHAM & WATKINS LLP
                                             555 Eleventh Street, NW
                                             Suite 1000
                                             Washington, D.C. 20004-1304
                                             Telephone: (202) 637-2200
                                             Email: jennifer.archie@lw.com
                                                     bradley.baglien@lw.com

                                             Robert C. Collins (*pro hac vice*)
                                             LATHAM & WATKINS LLP
                                             330 N. Wabash Ave, Suite 2800

58

Chicago, IL 60611
Telephone: (312) 876-7700
Email: robert.collins@lw.com

*Attorneys for Defendants*
*PeopleConnect, Inc., PeopleConnect*
*Holdings, Inc., Intelius, LLC, and*
*PeopleConnect Intermediate, LLC*

Dated: September 13, 2024

**TROUTMAN PEPPTER**
**HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
        melissa.chuderwicz@troutman.
        com

*Attorneys for Defendant Corelogic,*
*Inc.*

59

Dated: September 13, 2024

**McCARTER & ENGLISH, LLP**

*/s/ Scott S. Christie*
Scott S. Christie (ID: 37901989)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Email: schristie@mccarter.com

Curtis B. Leitner
McCARTER & ENGLISH, LLP
Worldwide Plaza
825 Eighth Ave., 31st Floor
New York, NY 10019
Telephone: (212) 609-6800
Email: cleitner@mccarter.com

*Attorneys for Defendants Defendants
Black Knight Technologies, LLC and
Black Knight, Inc.*

Dated: September 13, 2024

**BUCHANAN INGERSOLL &
ROONEY P.C.**

*/s/ Samantha L. Southall*
Samantha L. Southall (admitted pro
hac vice)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
215 665 3884 (o)
samantha.southall@bipc.com

Jacqueline M. Weyand
550 Broad Street, Suite 810
Newark, New Jersey 07102
973 273 9800 (o)
jacqueline.weyand@bipc.com

*Attorneys for Defendant Zillow, Inc.*

Dated: September 13, 2024

**GIBBONS P.C.**

*/s/ Frederick W. Alworth*
Frederick W. Alworth
Kevin R. Reich
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Tel: (973) 596-4500
falworth@gibbonslaw.com
kreich@gibbonslaw.com

*Attorneys for Defendant Equimine, Inc.*

Dated: September 13, 2024

**BALLARD SPAHR LLP**

*/s/ Marcel S. Pratt*
Marcel S. Pratt
Michael Berry
John W. Scott
Jordan Meyer
1735 Market Street, Fl. 51
Philadelphia, PA 19103-7599
215.864.8605
prattm@ballardspahr.com
berrym@ballardspahr.com
scottj@ballardspahr.com
meyerjl@ballardspahr.com

*Attorneys for Defendants Thomson Reuters Corporation, Thomson Reuters Holdings Inc., Thomson Reuters Canada Limited, and Thomson Reuters Applications Inc.*

61

Dated: September 13, 2024

**WILMER CUTLER PICKERING HALE AND DORR LLP**

*/s/ Alan Schoenfeld*
Alan Schoenfeld (New Jersey Bar No. 285532018)
Marissa M. Wenzel (*pro hac vice*)
Todd Clayton (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800 (phone)
(212) 230-8888 (fax)
alan.schoenfeld@wilmerhale.com
marissa.wenzel@wilmerhale.com
todd.clayton@wilmerhale.com

Christopher Davies (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000 (phone)
(202) 663-6363 (fax)
christopher.davies@wilmerhale.com

*Attorneys for Defendant Choreograph LLC*

Dated: September 13, 2024

**BUCHANAN INGERSOLL & ROONEY P.C.**

*/s/ Samantha L. Southall*
Samantha L. Southall (admitted pro hac vice)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555

215 665 3884 (o)
samantha.southall@bipc.com

Jacqueline M. Weyand
550 Broad Street, Suite 810
Newark, New Jersey 07102
973 273 9800 (o)
jacqueline.weyand@bipc.com

*Attorneys for Defendant Transunion
LLC*

Dated: September 13, 2024          **RIKER DANZIG LLP**

                                   /s/ *Michael P. O'Mullan*
                                   Michael P. O'Mullan (ID 029681996)
                                   Headquarters Plaza
                                   One Speedwell Avenue
                                   Morristown, NJ 07962
                                   Telephone: (973) 451-8477
                                   Email: momullan@riker.com

                                   *Attorneys for Defendant
                                   Melissa Data Corporation*

Dated: September 13, 2024          **KING & SPALDING LLP**

                                   /s/ *Thomas J. Scrivo*
                                   Thomas J. Scrivo
                                   King & Spalding LLP
                                   1185 Avenue of the Americas
                                   34th Floor
                                   New York, NY  10036-2601
                                   Tel: 212-556-2100
                                   Fax: 212-556-2222
                                   Email: tscrivo@kslaw.com

                                   Zachary A. McEntyre*
                                   John C. Toro*
                                   Charles G. Spalding, Jr.**

63

King & Spalding LLP
1180 Peachtree Street
Atlanta, GA  30309
Tel.: (404) 572-4600
Fax: (404) 572-5100
Email: zmcentyre@kslaw.com
Email: jtoro@kslaw.com
Email: cspalding@kslaw.com

*Admitted Pro Hac Vice
**Pro Hac Vice forthcoming

Counsel for Equifax Inc. and Kount Inc.

Dated: September 13, 2024                **SILLS CUMMIS & GROSS P.C.**

/s/ Joshua N. Howley
Joshua N. Howley
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
(973) 643-7000
jhowley@sillscummis.com

Andrew J. Pincus*
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

John Nadolenco
Daniel D. Queen
MAYER BROWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 229-9500
jnadolenco@mayerbrown.com

Benjamin D. Bright*
Jonathan D. Stahl*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
bbright@mayerbrown.com

*pro hac vice

*Attorneys for Defendant Spokeo, Inc.*

Dated: September 13, 2024                **STINSON LLP**

/s/ *Richard J.L. Lomuscio*
Richard J.L. Lomuscio
100 Wall Street, Suite 201
New York, New York 10005
Telephone:   646-883-7471
richard.lomuscio@stinson.com

Matthew D. Moderson
1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106
Telephone:   816-691-2736
matt.moderson@stinson.com

*Attorneys for i360, LLC*

Dated: September 13, 2024                **McCARTER & ENGLISH, LLP**

/s/ *Scott S. Christie*
Scott S. Christie (ID: 37901989)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Email: schristie@mccarter.com

*Attorneys for Defendant Telnyx LLC*

Dated: September 13, 2024               **GREENBERG TRAURIG, LLP**

                                        /s/ *David E. Sellinger*
                                        David E. Sellinger
                                        Aaron Van Nostrand
                                        GREENBERG TRAURIG, LLP
                                        500 Campus Drive, Suite 400
                                        Florham Park, NJ 07932-0677
                                        (973) 360-7900
                                        sellingerd@gtlaw.com
                                        vannostranda@gtlaw.com

                                        *Attorneys for Defendants*
                                        *GoHunt LLC, GoHunt Management*
                                        *Holdings, GoHunt Management*
                                        *Holdings II, LLC*

Dated: September 13, 2024               **LOWENSTEIN SANDLER LLP**

                                        /s/ *Jennifer Fiorica Delgado*
                                        Jennifer Fiorica Delgado
                                        Markiana J. Julceus
                                              One Lowenstein Drive
                                        Roseland, New Jersey 07068
                                        646.414.6962
                                        862.926.2707
                                        jdelgado@lowenstein.com
                                        mjulceus@lowenstein.com

                                        *Attorneys for Defendant AccuZIP,*
                                        *Inc.*

Dated: September 13, 2024               **LEWIS BRISBOIS BISGAARD &**
                                        **SMITH, LLP**

                                        /s/ *Thomas C. Regan.*
                                        Thomas C. Regan, Esq.

66

Matthew S. AhKao, Esq.
LEWIS BRISBOIS BISGAARD &
SMITH, LLP
One Riverfront Plaza, Suite 800
Newark, NJ 07102
Telephone: (973) 577-6260
Email:
Thomas.Regan@lewisbrisbois.com
Matthew.AhKao@lewisbrisbois.com

*Attorneys for Defendant Synaptix
Technology, LLC*

Dated: September 13, 2024          **GREENSPOON MARDER**

                                   /s/ *Kelly M. Purcaro*
                                   Kelly M. Purcaro, Esq. (ID:
                                   017692009)
                                   Kory Ann Ferro, Esq. (ID:
                                   065932013)
                                   GREENSPOON MARDER
                                   One Riverfront Plaza
                                   1037 Raymond Blvd., Suite 900
                                   Newark, New Jersey 07102
                                   Tel.: (732) 456-8746
                                   Kelly.Purcaro@gmlaw.com
                                   KoryAnn.Ferro@gmlaw.com

                                   *Attorneys for Defendants Joy
                                   Rockwell Enterprises, Inc. d/b/a
                                   PostcardMania PCM LLC*

Dated: September 13, 2024          **THOMPSON HINE LLP**

                                   /s/ *J. Timothy McDonald*
                                   J. Timothy McDonald (ID No.
                                   027201990)
                                   Jennifer A. Adler (pro hac vice)
                                   THOMPSON HINE LLP
                                   Two Alliance Center

3560 Lenox Road, Suite 1600
Atlanta, Georgia 30326
Phone: 404.541.2900
Fax: 404.541.2906
Tim.McDonald@thompsonhine.com
Jennifer.Adler@thompsonhine.com

Steven G. Stransky (*pro hac vice*)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Phone: 216.566.5500
Fax: 216.566.5800
Steve.Stransky@thompsonhine.com

*Attorneys for Defendant Fortnoff Financial, LLC*

Dated: September 13, 2024

**MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP**

/s/ *Nicholas K. Lagemann*
Nicholas K. Lagemann
MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel: (973) 425-8210
NLagemann@mdmc-law.com

Jacquelyn Fradette (*pro hac vice*)
Alan Charles Raul (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8822
jfradette@sidley.com
araul@sidley.com

68

Tyler J. Domino (*pro hac vice*)
Sɪᴅʟᴇʏ Aᴜsᴛɪɴ LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
tdomino@sidley.com

*Attorneys for Defendants MyHeritage
Ltd. and MyHeritage (USA), Inc.*

Dated: September 13, 2024          **RKW, LLC**

/s/ *Stacy Torres*
H. Mark Stichel*
Stacey Torres (293522020)
10075 Red Run Blvd, Ste 401
Owings Mills, Maryland 21117
(443) 379-8941
storres@rkwlawgroup.com

*Admitted pro hac vice

*Attorneys for Defendant
eMerges.com Inc.*

Dated: September 13, 2024          **DENTONS US LLP**

/s/ *Stephen M. Turner*
Stephen M. Turner, Esq.
DENTONS US LLP
101 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Telephone: (973) 912-7146
Email: stephen.turner@dentons.com

Kristen C. Rodriguez, Esq. (admitted
pro hac vice)
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020

69

Telephone: (212) 398-5280
Email:
kristen.rodriguez@dentons.com

*Attorneys for Defendant Wiland, Inc.*

Dated: September 13, 2024

**TROUTMAN PEPPTER
HAMILTON SANDER LLP**

/s/ *Angelo A. Stio*
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
melissa.chuderwicz@troutman.com

*Attorneys for Defendant AtData LLC.*

Dated: September 13, 2024

**SAUL EWING LLP**

/s/ *William C. Baton*
William C. Baton
Sarah A. Sullivan
Alexander L. Callo
SAUL EWING LLP
One Riverfront Plaza
1037 Raymond Blvd.
Newark, NJ 07102-5426
(973) 286-6700
wbaton@saul.com
sarah.sullivan@saul.com

**COOLEY LLP**
Matthew D. Brown (admitted pro hac
vice)

70

Bethany C. Lobo (admitted pro hac vice)
3 Embarcadero Center, 20th Floor
San Francisco, CA  94111
Telephone:  (415) 693-2000
E-mail:  brownmd@cooley.com
E-mail:  blobo@cooley.com

Rebecca L. Tarneja (admitted pro hac vice)
355 S. Grand Avenue, Suite 900
Los Angeles, CA  90071
Telephone:  (213) 561-3250
E-mail:  rtarneja@cooley.com

*Attorneys for Defendants Precisely Holdings, LLC, Precisely Software Inc., and Precisely Software Ltd.*

Dated: September 13, 2024

**GORDON REES SCULLY MANSUKHANI LLP**

/s/ *Clair E. Wischusen*
Clair E. Wischusen (ID: 018022009)
Bianca C. Evans (pro hac vice)
18 Columbia Turnpike
Suite 220
Florham Park, NJ 07932
Telephone: (973) 549-2500
Email: cwischusen@grsm.com
bevans@grsm.com

*Attorneys for Defendant, Nuwber, Inc.*

Dated: September 13, 2024

**TROUTMAN PEPPTER HAMILTON SANDER LLP**

/s/ *Angelo A. Stio*
Angelo A. Stio III
Melissa A. Chuderewicz

71

TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
melissa.chuderwicz@troutman.com

*Attorneys for Defendant Rocketreach
LLC*

Dated: September 13, 2024          **GREENBERG TRAURIG, LLP**

                                   /s/ *Aaron Van. Nostrand          .*
                                   Aaron Van Nostrand
                                   GREENBERG TRAURIG, LLP
                                   500 Campus Drive, Suite 400
                                   Florham Park, NJ 07932-0677
                                   (973) 360-7900

                                   *Attorneys for Defendant
                                   Outside Interactive, Inc.*

Dated: September 13, 2024          **SAUL EWING LLP**

                                   /s/ *William C. Baton*
                                   William C. Baton
                                   Sarah A. Sullivan
                                   Alexander L. Callo
                                   SAUL EWING LLP
                                   One Riverfront Plaza
                                   1037 Raymond Blvd.
                                   Newark, NJ 07102-5426
                                   (973) 286-6700
                                   wbaton@saul.com
                                   sarah.sullivan@saul.com
                                   alexander.callo@saul.com

                                   **COOLEY LLP**

72

Matthew D. Brown (admitted pro hac vice)
Bethany C. Lobo (admitted pro hac vice)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
E-mail: brownmd@cooley.com
E-mail: blobo@cooley.com

Rebecca L. Tarneja (admitted pro hac vice)
355 S. Grand Avenue, Suite 900
Los Angeles, CA 90071
Telephone: (213) 561-3250
E-mail: rtarneja@cooley.com

*Attorneys for Defendants Valassis Digital Corp. and Valassis Communications, Inc.*

Dated: September 13, 2024

**MANATT, PHELPS & PHILLIPS, LLP**

/s/ *Kenneth D. Friedman*
Kenneth D. Friedman
7 Times Square
New York, New York 10036
(212) 790-4500
kfriedman@manatt.com

Kareem A. Salem (pro hac vice)
Brandon Reilly (pro hac vice)
662 Encinitas Blvd., Suite 216
Encinitas, CA 92024
(619) 205-8520
ksalem@manatt.com
breilly@manatt.com

*Attorneys for Defendant Vericast*

73

*Corp.*

Dated: September 13, 2024

**MCCARTER & ENGLISH LLP**

/s/ *Christopher A. Rojao*
Christopher A Rojao
Ryan A. Savercool
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
crojao@mccarter.com
rsavercool@mccarter.com

**HOGAN LOVELLS US LLP**
/s/ *Jon M. Talotta*
Jon M. Talotta (admitted pro hac vice)
8350 Broad Street (Boro Tower)
Tysons, VA 22102
Tel: 703.610.6100
jon.talotta@hoganlovells.com
David M. Cheifetz (admitted pro hac vice)
Elizabeth C. Milburn (pro hac vice to be filed)
390 Madison Avenue
New York, New York 10017
Tel: 212.918.3000
david.cheifetz@hoganlovells.com
tina.milburn@hoganlovells.com

*Attorneys for Defendants in 1:24-cv-4850-HB, The Lifetime Value Co. LLC, BeenVerified, LLC, NeighborWho LLC, The NumberGuru, LLC, PeopleLooker LLC, PeopleSmart LLC, Ownerly, LLC*

Dated: September 13, 2024                    **BLANK ROME**

                                            /s/ *Phillip N. Yannella*____
                                            STEPHEN M. ORLOFSKY
                                            NEW JERSEY RESIDENT
                                            PARTNER
                                            PHILIP N. YANNELLA
                                            THOMAS P. CIALINO300 Carnegie
                                            Center, Suite 220
                                            Princeton, NJ 08540
                                            Telephone: (609) 750-7700
                                            Facsimile: (609) 750-7701
                                            Stephen.Orlofsky@BlankRome.com
                                            Philip.Yannella@BlankRome.com
                                            Thomas.Cialino@BlankRome.com

                                            *Attorneys for Defendant*
                                            *Belles Camp Communications, Inc.*

Dated: September 13, 2024                    **MONTGOMERY MCCRACKEN
                                            WALKER & RHOADS LLP**

                                            /s/ *Alexandra S. Jacobs*__ _ __
                                            Alexandra S. Jacobs
                                            John Papianou
                                            457 Haddonfield Road, Suite 600
                                            Cherry Hill, NJ 08002
                                            856.488.7746
                                            ajacobs@mmwr.com
                                            jpapianou@mmwr.com

                                            **HUDSON COOK LLP**
                                            Rebecca E. Kuehn (pro hac vice
                                            forthcoming)
                                            Robert D. Tilley (pro hac vice
                                            forthcoming)
                                            Jason F. Esteves (pro hac vice
                                            forthcoming)
                                            1909 K Street, NW, 4th Floor
                                            Washington, DC 20006

                                            75

202.327.9710 / 202.327.9711
rkuehn@hudco.com
rtilley@hudco.com
jesteves@hudco.com

*Attorneys for Defendant, First*
*American Financial Corporation*

Dated: September 13, 2024

**TROUTMAN PEPPTER**
**HAMILTON SANDER LLP**

/s/ *Angelo A. Stio*
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
melissa.chuderwicz@troutman.com

*Attorneys for Defendant Property*
*Radar, Inc.*

Dated: September 13, 2024

**GREENSPOON MARDER**

/s/ *Kelly M. Purcaro.*
Kelly M. Purcaro, Esq. (ID:
017692009)
Kory Ann Ferro, Esq. (ID:
065932013)
GREENSPOON MARDER
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, New Jersey 07102
Tel.: (732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

76

*Attorneys for Defendants*
*The Alesco Group, LLC*

Dated: September 13, 2024                    **GREENSPOON MARDER**

                                             /s/ *Kelly M. Purcaro*
                                             Kelly M. Purcaro, Esq. (ID:
                                             017692009)
                                             Kory Ann Ferro, Esq. (ID:
                                             065932013)
                                             GREENSPOON MARDER
                                             One Riverfront Plaza
                                             1037 Raymond Blvd., Suite 900
                                             Newark, New Jersey 07102
                                             Tel.: (732) 456-8746
                                             Kelly.Purcaro@gmlaw.com
                                             KoryAnn.Ferro@gmlaw.com

                                             *Attorneys for Defendants*
                                             *Searchbug, Inc.*

Dated: September 13, 2024                    **GREENSPOON MARDER**

                                             /s/ *Kelly M. Purcaro*
                                             Kelly M. Purcaro, Esq. (ID:
                                             017692009)
                                             Kory Ann Ferro, Esq. (ID:
                                             065932013)
                                             GREENSPOON MARDER
                                             One Riverfront Plaza
                                             1037 Raymond Blvd., Suite 900
                                             Newark, New Jersey 07102
                                             Tel.: (732) 456-8746
                                             Kelly.Purcaro@gmlaw.com
                                             KoryAnn.Ferro@gmlaw.com

                                             *Attorneys for Defendants*
                                             *Amerilist, Inc.*

77

Dated: September 13, 2024

**LOWENSTEIN SANDLER LLP**

*/s/ A. Matthew Boxer*

A. Matthew Boxer
Gavin J. Rooney
Rasmeet K. Chahil
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
mboxer@lowenstein.com
grooney@lowenstein.com
rchahil@lowenstein.com

*Attorneys for Defendants LexisNexis Risk Data Management, LLC and RELX Inc.*

Dated: September 13, 2024

**GREENSPOON MARDER**

/s/ *Kelly M. Purcaro.*

Kelly M. Purcaro, Esq. (ID: 017692009)
Kory Ann Ferro, Esq. (ID: 065932013)
GREENSPOON MARDER
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, New Jersey 07102
Tel.: (732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant US Data Corporation*